THE CALLAWASSIE ISLAND MEMBERS
CLUB, INC., Respondent,

v.

Ronnie D. DENNIS and Jeanette Dennis, Appellants.

Appellate Case No. 2014–001524
Opinion No. 5434
Court of Appeals of South Carolina.
Heard April 5, 2016
Filed August 3, 2016
Rehearing Denied September 23, 2016

Ian S. Ford and Neil Davis Thomson, both of Ford Wallace Thomson LLC, of Charleston, for Appellants.

M. Dawes Cooke, Jr., John William Fletcher, and Bradley B. Banias, all of Barnwell Whaley Patterson & Helms, LLC, of Charleston; Stephen P. Hughes and James Andrew Yoho, both of Howell Gibson & Hughes, PA, of Beaufort, for Respondent.

LOCKEMY, C.J.

Ronnie D. Dennis and Jeanette Dennis (Appellants) appeal the circuit court's grant of the Callawassie Island Members Club, Inc.'s motion for summary judgment. We reverse and remand to the circuit court.

**FACTS/PROCEDURAL BACKGROUND**

In 1999, Appellants purchased property on Callawassie Island, a private island located between Beaufort and Hilton Head Island. They also purchased a membership in the Callawassie Island Club (CIC). The provisions governing membership in CIC were memorialized in the Plan for Offering of Memberships in the Callawassie Island Club (CIC Plan). In 2001, CIC members purchased the club's assets and took over operation of the club under a new name, the Callawassie Island Members Club (CIMC). In conjunction with the purchase, CIMC issued an amended plan for offering of membership (CIMC Plan) and established its own general club rules (GCR) and bylaws.

In November 2010, Appellants stopped paying dues to CIMC, asserting their tender of a letter of resignation to CIMC relieved them of any further obligation to CIMC. Thereafter, in August 2011, CIMC filed a breach of contract action against Appellants for the collection of unpaid dues,

fees, assessments, and other charges. CIMC asserted the CIMC Plan, like the CIC Plan before it, required resigned members remain in good standing with CIMC until their memberships were reissued by CIMC. CIMC maintained Appellants were CIMC members and were bound by the CIMC Plan. According to CIMC, Appellants paid a $4,000 assessment required of members at the time of the transfer of assets from CIC to CIMC, were issued a membership certificate to CIMC, and continued to enjoy membership privileges for a number of years.

Appellants answered the complaint, alleging they were informed by CIMC management that club members who joined prior to 2001 would not be required to maintain a membership but could resign their membership at the member's discretion. Appellants further asserted the GCRs provide that members not paying dues will be suspended for four months, and members whose accounts are not settled within those four months shall be expelled from CIMC. Appellants asserted the GCRs provide that dues and fees do not accumulate as a result of an expulsion. Appellants also claimed CIMC did not maintain a fair and reasonable process for the termination of memberships, failed to allow members to approve fundamental changes to members' rights, failed to act in good faith, and made material misrepresentations to Appellants. Additionally, Appellants asserted counterclaims for breach of fiduciary duty and negligent misrepresentation.

On September 30, 2013, CIMC filed a motion for summary judgment. CIMC argued its contracts with Appellants (including the CIMC Plan, the GCRs, and the bylaws) were unambiguous in their collective requirement that a member must remain in good standing with CIMC until his membership is reissued. CIMC further argued the South Carolina Nonprofit Corporation Act[1] (the Act) provides that a member is not relieved from any obligations which were incurred, or commitments which were made, while he was still a member.

Following a hearing in November 2013, the circuit court granted CIMC's motion for summary judgment on January 15, 2014. The court found CIMC's governing documents were unambiguous and clearly required a resigned member to pay

---

1. S.C. Code Ann. §§ 33–31–101 to –1708 (Supp. 2015).

dues until his membership is reissued. The court further found there was no evidence of fraud or bad faith on the part of the CIMC Board of Directors (CIMC Board), and the Act clearly provides that a member cannot void a contractual undertaking simply by leaving a club. The court also found CIMC was entitled to summary judgment on Appellants' breach of fiduciary duty and negligent misrepresentation claims. The court awarded CIMC $51,131.76 in unpaid dues and attorney's fees.

Thereafter, Appellants filed a motion for reconsideration, objecting to the form of the summary judgment order and the legal standard employed by the court in reaching its determination. They alleged there were questions of fact for the jury to decide, including what documents apply and bind the parties; what documents constitute a contract between the parties; the amount of damages owed; whether CIMC is bound by statements of its agents that Appellants would accumulate no more than four months of dues and fees before being expelled; whether it violates state law for Appellants to be treated differently than other similarly situated members; and whether it violates state law to not allow Appellants to resign.

Following a hearing in May 2014, the circuit court issued an amended order, once again granting CIMC summary judgment and denying Appellants' motion to reconsider. This appeal followed.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard that governs the trial court under Rule 56(c), SCRCP, which provides that summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). In determining whether a genuine issue of fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the nonmoving party. *Saumer v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003). To withstand a motion for summary judgment in cases applying the preponderance of the evidence burden of proof, the nonmoving party is only required to submit a mere

scintilla of evidence. *Hancock v. Mid–South Mgmt. Co., Inc.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009).

LAW/ANALYSIS

## I. Issues of Fact

Appellants argue the circuit court erred in failing to apply the "mere scintilla" standard and disregarding evidence of genuine issues of material fact.

### A. Contractual Relationship

■ First, Appellants contend a genuine issue of fact exists as to whether they have a contractual relationship with CIMC. Appellants argue there is no evidence their CIC membership was transferred to CIMC. They maintain they signed a purchase agreement with CIC in 1999 and never entered into any membership agreement with CIMC. Conversely, CIMC argues Appellants' CIMC membership is evidenced by their payment of a $4,000 assessment associated with the transfer of CIC to CIMC and the issuance of a membership certificate to Appellants.[2] CIMC also argues Appellants' CIMC membership is evidenced by their admission of their continued use of CIMC amenities and their admission that they had a duty to pay dues to CIMC until their membership was resigned, transferred back to CIMC, or as otherwise terminated as allowed by the governing documents.

We hold a question of fact does not exist as to whether Appellants were members of CIMC. The evidence in the record supports the circuit court's finding that Appellants' membership in CIC transferred to CIMC upon the sale of the club. We note the 1994 CIC Plan expressly contemplated the transfer of CIC assets to the membership, which occurred in 2001 when CIMC assumed control. Appellants also admitted in their answer that they received benefits from their membership until their resignation.

### B. Governing Documents

■ Appellants assert there are genuine disputes as to (1) which governing documents are controlling, and (2) the inter-

---

2. Appellants do not address this assertion in their brief, and we were unable to find any evidence of this claim in the record.

pretation and application of the governing documents as they relate to Appellants' obligations to pay dues.

Appellants argue the circuit court referenced several CIMC documents (including the 2007, 2008, and 2009 amended GCRs, as well as the 2001, 2007, 2008, and 2012 amended CIMC Plans and the 2001 Bylaws) but failed to identify which documents were controlling. Appellants contend that in granting summary judgment, the circuit court relied upon language from various amended documents but applied its analysis with no uniformity or consistency. They further assert that although the court found the governing documents were unambiguous, it failed to specify which documents were unambiguous.

CIMC maintains the following documents were provided to the circuit court at the November 2013 hearing: the 1994 CIC Plan; the 2001, 2007, and 2008 CIMC Plans; and the 1994 GCRs and bylaws. CIMC further contends it provided all of the amended versions of these documents to the court at the May 2014 hearing.

We find the circuit court erred in granting summary judgment because there is some ambiguity in the governing documents as to whether club members are liable for dues accruing after resignation. *See Cafe Associates, Ltd. v. Gerngross*, 305 S.C. 6, 9, 406 S.E.2d 162, 164 (1991) ("As a general rule, written contracts are to be construed by the Court; but where a contract is ambiguous or capable of more than one construction, the question of what the parties intended becomes one of fact, and the question should be submitted to the jury.").

Specifically, the 1994 GCRs provide:

Any member may terminate membership in the Club by delivering to the Club's Secretary written notice of termination in accordance with the By-laws. Notwithstanding termination, the member shall remain liable for any unpaid club account, membership dues and charges (including any food and beverage minimums).

However, unlike the 1994 GCRs, the 1994 CIC Plan and Bylaws provide resigned members are obligated to continue to pay dues *until their memberships are reissued*. Further ambiguity is found is in the 2009 GCRs, which provide that members who have terminated their club memberships remain

liable for *unpaid* dues until their membership is sold. The term "unpaid" is not defined in the documents. It is unclear whether the language relating to unpaid dues refers to unpaid dues owed at the time of resignation or unpaid dues accruing before and after resignation.

Thus, we find the evidence relating to the issue of whether Appellants were obligated to pay dues post-resignation, viewed in the light most favorable to Appellants, leaves a genuine issue of material fact for trial and, thus, precludes judgment for Callawassie as a matter of law.

■ Appellants further argue the circuit court failed to address language in the governing documents which provides that the liability for unpaid dues ends after four months of delinquency by the mandatory process of expulsion. Appellants contend they had the right to be expelled from CIMC once their dues were delinquent for the four month period. The 2001 GCRs provide:

> **13.3.1.** Any member whose account is delinquent for sixty (60) days from the statement date may be suspended by the Board of Directors. ... Any member whose account is not settled within the four (4) months' period following suspension shall be expelled from the Club.

Appellants presented evidence that prior to joining CIC they were assured by CIC employee Ellen Padgett[3] that they would never be obligated to pay for more than four months of past dues. Ronnie Dennis testified Padgett informed him his "maximum liability was for four months," and Jeanette Dennis testified Padgett told her if Appellants wanted to leave the club they would only be responsible for four months of dues. Padgett testified in her deposition that she understood section 13.3.1 to mean that after four months of delinquency, a member would lose his or her membership.

We acknowledge that section 13.3.1 provides club members *may* be suspended; however, in light of the subsequent mandatory expulsion language and the conflicting evidence presented as to the club's actual suspension and expulsion practices, we agree with Appellants that the language of the GCRs

---

3. Padgett remained on staff with CIC after it became CIMC. She is referred to as the membership administrator, membership secretary, and membership coordinator throughout the record.

presented an ambiguity as to whether Appellants were entitled to expulsion and thus exposed to a maximum liability of four months' of unpaid dues (plus any accrued expenses). Where there is some ambiguity in the governing documents as to whether expelled members are still liable for dues accruing after expulsion, summary judgment is inappropriate. *See Cafe Associates, Ltd. v. Gerngross*, 305 S.C. 6, 9, 406 S.E.2d 162, 164 (1991) ("As a general rule, written contracts are to be construed by the Court; but where a contract is ambiguous or capable of more than one construction, the question of what the parties intended becomes one of fact, and the question should be submitted to the jury.").

## II. The Nonprofit Corporations Act

■ Appellants argue the circuit court erred in failing to properly apply the Act. Specifically, Appellants contend the circuit court erred in finding that assigning liability for continuing obligations post resignation is not statutorily prohibited under section 33–31–620 of the South Carolina Code (2006).

Section 33–31–620 provides "(a) [a] member may resign at any time. (b) The resignation of a member does not relieve the member from any obligations the member may have to the corporation as a result of obligations incurred or commitments made before resignation."

Section 33–31–620 obligates resigned members to pay any dues incurred *before* resignation. This section does not require resigned members to continue to pay any dues that accrue *after* resignation. To do so, we believe, would create an unreasonable situation in which clubs could refuse to allow a member to ever terminate their membership obligations. In essence, Appellants would be trapped like the proverbial guests in the Eagles' hit *Hotel California*, who are told "you can check-out anytime you like, but you can never leave."[4]

Appellants state in their brief it is undisputed that CIMC membership is no longer available to non-Callawassie property holders. With only 85 lots remaining for development and every fourth purchase coming off the resale list, it is possible only 21 names will ever come off the list. Appellants are 72nd

---

4. Eagles, *Hotel California, on* Hotel California (Asylum 1977).

on the resale list. Therefore, it appears unlikely Appellants will ever be able to sell their membership. We find section 33-31-620 protects club members from such continuing liability after resignation.

## CONCLUSION

We **REVERSE** the circuit court's order granting summary judgment and **REMAND** this case for trial.[5]

WILLIAMS and MCDONALD, JJ., concur.

---

5. Based upon our reversal of the grant of summary judgment, the court need not address Appellants' remaining issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of prior issue is dispositive).