# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The Callawassie Island Members Club, Inc., Respondent,

v.

Ronnie D. Dennis and Jeanette Dennis, Appellants.

Appellate Case No. 2014-001524

———————————

Appeal From Beaufort County
Carmen T. Mullen, Circuit Court Judge

———————————

Opinion No. 5696
Heard May 7, 2019 – Filed December 18, 2019

———————————

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

———————————

Ian S. Ford and Neil Davis Thomson, both of Ford
Wallace Thomson, LLC, of Charleston, for Appellants.

M. Dawes Cooke, Jr., John William Fletcher, and
Bradley B. Banias, all of Barnwell Whaley Patterson &
Helms, LLC, of Charleston; Stephen P. Hughes, of
Howell Gibson & Hughes, PA, of Beaufort; James
Andrew Yoho, of Carlock Copeland & Stair, LLP, of
Charleston; and Andrew F. Lindemann, of Lindemann,
Davis & Hughes, PA, of Columbia, for Respondent.

———————————

**LOCKEMY, C.J.:**  This case comes before this court on remand after the supreme court's decision in *Callawassie Island Members Club, Inc. v. Dennis*, 425 S.C. 193,

821 S.E.2d 667 (2018), with instructions to address the Dennises' remaining issues on appeal.

## FACTS/PROCEDURAL BACKGROUND

In 1999, Ronnie and Jeanette Dennis purchased property on Callawassie Island. At that time, the Dennises joined a private non-profit club known as the Callawassie Island Club, and paid $31,000 to become "equity members." In their application, the Dennises agreed their membership would be governed by the "Plan for the Offering of Memberships in The Callawassie Island Club," which the developer of Callawassie Island created in 1994. The 1994 Plan included exhibits labeled as Bylaws and Rules. The 1994 Plan stated, "An equity member who has resigned from the Club will be obligated to continue to pay dues and food and beverage minimums to the Club until his or her equity membership is reissued by the Club." Similarly, the 1994 Bylaws stated, "Any equity member may resign from the Club by giving written notice to the Secretary. Dues, fees, and charges shall accrue against a resigned equity membership until the resigned equity membership is reissued by the Club."

The 1994 Plan contemplated that the members would eventually take over the assets and operation of the Island Club. In 2001, the members of the Island Club formed The Callawassie Island Members Club, Inc. (the Club) for this purpose. The Club assumed ownership and operations of all Island Club amenities, including a golf course and driving range, tennis courts, a swimming pool, and a clubhouse. The members of the Island Club—including the Dennises—received a membership certificate to the Club and continued to enjoy the benefits of membership. The Club established its own Bylaws, Plan, and Rules in 2001, each of which was amended several times over the years.

In 2010, the Dennises decided they no longer wanted to be in the Club, so they submitted a "letter of resignation" and stopped making all payments. Those payments included $634 per month for the membership, "special assessments" that totaled $100 per month, and yearly food and beverage minimums of $1,000. In 2011, the Club filed a breach of contract action against the Dennises, alleging the unambiguous terms of the membership documents required the Dennises to continue to pay their membership dues, fees, and other charges until their membership is reissued. The Dennises denied any liability, alleging they were told by a club manager that their maximum liability would be only four months of dues, because after four months of not paying, they would be expelled. The Dennises also alleged the membership arrangement violates the South Carolina Nonprofit

Corporation Act. *See* S.C. Code Ann. §§ 33-31-101 to -1708 (2006 & Supp. 2019).

The Club filed a motion for summary judgment. The circuit court held a hearing and issued an order granting summary judgment. The circuit court found the membership documents unambiguously require a resigned member to continue to pay dues, fees, and other charges until the membership is reissued. The court rejected the Dennises' arguments relating to the Nonprofit Corporation Act.

The Dennises appealed, and this court reversed on both issues. *See Callawassie Island Members Club, Inc. v. Dennis*, 417 S.C. 610, 790 S.E.2d 435 (Ct. App. 2016). We found there was "some ambiguity in the governing documents as to whether club members are liable for dues accruing after resignation." 417 S.C. at 616, 790 S.E.2d at 438. In addition, we found the provisions of the documents that require the Dennises to continue to pay their membership dues after resignation violate section 33-31-620 of the Nonprofit Corporation Act. 417 S.C. at 618-19, 790 S.E.2d at 439. We found it unnecessary to address the other issues raised on appeal, 417 S.C. at 619 n.5, 790 S.E.2d at 440 n.5, and remanded to the circuit court for trial, 417 S.C. at 619, 790 S.E.2d at 440.

The Club filed a petition for a writ of certiorari, which the supreme court granted. In a 3-2 decision, the supreme court reversed this court and reinstated summary judgment in favor of the Club. *Callawassie Island Members Club, Inc. v. Dennis*, 425 S.C. 193, 821 S.E.2d 667 (2018). The supreme court held the membership documents[1] unambiguously provide that club members are required to continue to pay all membership dues, fees, and other charges after resignation until their membership is reissued. *Id.* at 200, 821 S.E.2d at 670. The court found this requirement was not prohibited by section 33-31-620 of the Nonprofit Corporation Act. *Id.* at 206, 821 S.E.2d at 673. The supreme court remanded to this court to address the remaining issues on appeal. *Id.* at 206, 821 S.E.2d at 674.

**STANDARD OF REVIEW**

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard that governs the trial court under Rule 56(c), SCRCP, which provides that summary judgment is proper when there is no genuine issue as

---

[1] The supreme court found the 2008 Plan, the 2009 Bylaws, and the 2009 Rules were in effect when the Dennises resigned in 2010. *Dennis*, 425 S.C. at 199, 821 S.E.2d at 670.

to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). In determining whether a genuine issue of fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the nonmoving party. *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003). To withstand a motion for summary judgment in cases applying the preponderance of the evidence burden of proof, the nonmoving party is only required to submit a mere scintilla of evidence. *Hancock v. Mid-South Mgmt. Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009).

## LAW/ANALYSIS

The Dennises assert the following issues were neither addressed by this court nor reached by the supreme court.

## I. Standard of Review

The Dennises contend the circuit court improperly shifted the burden of proof and failed to apply the "mere scintilla" standard. This issue was decided by the supreme court when the court cited the applicable standard of review. *See Dennis*, 425 S.C. at 198, 821 S.E.2d at 669. Accordingly, we need not address this issue.

## II. Governing Documents

### A. Ability to Concede/Swap Memberships

The Dennises argue genuine issues of fact exist as to whether they were treated differently from other Club members. The Dennises contend (1) the Club refused to allow them to swap memberships with another willing club member, and (2) the Club allowed other members to concede memberships but refused to do so for the Dennises.

The circuit court found that to the extent club members were treated differently, such treatment was in furtherance of the negotiated settlements of debts owed to the Club. The circuit court held the board of directors was authorized by the Club's governing documents and section 33-31-302 of the Nonprofit Corporation Act to take such actions. Therefore, the circuit court stated it would not review the *intra vires* corporate action of the Club, where it was exercising its business judgment, and there was no evidence suggesting self-dealing, fraud, or bad faith on the part of the board.

The Dennises argue they have been injured by the Club's denial of their request to swap a golf membership with the less costly social membership of another member. Jeannette Dennis testified the Dennises, unlike other club members, were unable to swap memberships. The Dennises rely on the Club's 1994 Bylaws to support their position that such swaps were permitted by the Club. Pursuant to the 1994 Bylaws,

> Social Members may, at all times subject to availability, upgrade to a Golf Membership upon the payment of the difference between the membership contribution for a Golf Membership, and the membership contribution for a Social Membership, at the time of the upgrade. The downgrade of a Golf Membership to a Social Membership is not permitted unless there is another equity member who desires to upgrade to the Golf Membership.

The 1994 Bylaws were not in effect when the Dennises resigned in 2010. The full version of the 2009 Bylaws, which were in effect at the time the Dennises resigned, is not in the record.

Next, the Dennises argue they were injured by the Club's refusal to allow them to concede their membership. The Dennises cite a number of examples of the Club allowing some members to concede their memberships and end all financial obligations to the Club. The record includes concession letters from the Club, the Club's resale list which documents the members who conceded their memberships, and deposition testimony from a former board member and membership director. The governing documents do not contain any provisions governing the concession of a club membership.

We find the Dennises have presented at least a mere scintilla of evidence that some club members were permitted to concede their memberships, thus creating a disputed material issue of fact as to the claim that the Club violated the Nonprofit Corporation Act. We discuss the Act below.

### B. Nonprofit Corporation Act

The Dennises argue the circuit court failed to consider sections 33-31-610 and 33-31-611(c) of the Act. The Dennises assert that while these provisions of the Act

require all club members to have the same rights, they were treated differently from other members with regard to previous requests to swap or concede their membership.

Section 33-31-610 provides,

> [a]ll members have the same rights and obligations with respect to voting, dissolution, redemption, and transfer, unless the articles or bylaws establish classes of membership with different rights or obligations. All members have the same rights and obligations with respect to any other matters, except as set forth in or authorized by the articles or bylaws.

S.C. Code Ann. § 33-31-610 (2006). Section 33-31-611(c) states, "[w]here transfer rights have been provided, no restriction on them is binding with respect to a member holding a membership issued before the adoption of the restriction unless the restriction is approved by the members and the affected member." S.C. Code Ann. § 33-31-611(c) (2006).

The circuit court treated the determination of whether the Club violated the Act by allowing other members to concede memberships as a question of law. We hold the determination of whether the Club violated the Act is more appropriately an issue to be determined by a factfinder. Accordingly, we reverse the circuit court's grant of summary judgment and the accompanying award of damages.

## C. Amendment of Governing Documents

The Dennises argue genuine issues of fact exist as to whether the Club's governing documents were properly amended. Specifically, they contend the Club changed language in section 13.3.1 of the Rules from "shall be expelled" to "may be expelled" without discussion among the board and without presentation to club members. The Dennises rely on the deposition testimony of Karen Norwood, former board president, who testified the change was made without consultation with club members.

Pursuant to section 13.3.1 of the 2001 Rules, "[a]ny member whose account is delinquent for sixty (60) days from the statement date *may* be suspended by the Board of Directors. . . . Any member whose account is not settled within the four

(4) months' period following suspension *shall* be expelled from the Club."
(emphasis added).

The record does not contain any subsequent version of section 13.3.1. Assuming this rule remains unchanged except for the "shall" and "may" language in the 2009 Rules, which were in effect when the Dennises resigned in 2010, we need not decide this issue. As noted by the supreme court, the rules regarding expulsion are clear that mandatory expulsion arises only after the board has suspended a member, which is discretionary with the board. *See Dennis*, 425 S.C. at 204, 821 S.E.2d at 673. Here, the Dennises resigned; they were never suspended. Thus, the expulsion provision was never triggered.

In addition, pursuant to the 2001 Rules, the board had the right to change the rules without a vote of the membership. Section 1.3 of the 2001 Rules provides "[t]he Board of Directors reserves the right to amend or modify these rules when necessary and will notify the membership of such changes. Any such amendments or modifications shall be subject to and controlled by the applicable provisions of the By-Laws and the Plan for the Offering of Memberships."[2] Accordingly, we find a genuine issue of fact does not exist as to whether the governing documents were properly amended.

## D. Contract

The Dennises argue there is no evidence in the record supporting the circuit court's conclusions that club members voted to take over the assets of the Club. This issue was addressed by this court and the supreme court; therefore, we need not address this issue on remand. The supreme court held:

> We begin our analysis of this case with a general discussion of the membership arrangement and the membership documents that govern that arrangement. Three documents governed the Dennises' membership in the Island Club and the Members Club—the Bylaws, the Plan, and the Rules. The three documents reference each other and are intended to operate together. When the Dennises first joined the Island Club, the 1994 versions of those documents applied. However, these documents were amended several times over the years, as permitted

---

[2] The 2009 Rules contain the same provision.

by the Bylaws, the Plan, and the Rules. The first amendments occurred when the club assets were transferred from the Island Club to the Members Club in 2001, at which point the Members Club enacted its own Plan, Bylaws, and Rules. All three documents were further amended several times during the 2000s. There is no evidence that the various amendments to the documents were in any way contrary to the Bylaws, Plan, and Rules in place at the time of the amendments.

*Dennis*, 425 S.C. at 198-99, 821 S.E.2d at 670. Noting our prior rejection of the Dennises's argument that there was no evidence their Island Club membership transferred to the Club, the supreme court specifically found there was "no question" the Dennises were contractually bound to the Club.

## III.   Attorney's Fees

Because of our reversal of the grant of summary judgment to the Club, we also reverse the award of attorney's fees to the Club. *See Camburn v. Smith*, 355 S.C. 574, 581, 586 S.E.2d 565, 568 (2003) ("An award of attorney's fees will be reversed [when] the substantive results achieved by counsel are reversed on appeal.").

## CONCLUSION

We affirm the circuit court's grant of summary judgment on the Dennises' claim that the Club improperly amended the governing documents. In addition, we find a genuine issue of fact exists as to whether the Club violated the Nonprofit Corporation Act by allowing some club members to concede their memberships and not others. Accordingly, we reverse the grant of summary judgment as to this issue and remand to the circuit court for trial.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**SHORT and MCDONALD, JJ., concur.**