**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The Callawassie Island Members Club, Inc., Respondent,

v.

Gregory L. Martin and Rebecca L. Martin, Defendants,

and

The Callawassie Island Members Club, Inc., Respondent,

v.

Michael J. Frey and Grace I. Frey, Defendants,

and

The Callawassie Island Members Club, Inc., Respondent,

v.

Mark K. Quinn and Sherry B. Quinn, Defendants,

Of Whom Gregory L. Martin, Michael J. Frey, and Mark K. Quinn are the Appellants.

Appellate Case No. 2015-000001

Appeal From Beaufort County
J. Ernest Kinard, Jr., Circuit Court Judge

Unpublished Opinion No. 2019-UP-393
Originally Filed as 2018-UP-178, 2018-UP-179 and 2018-UP-180
Heard May 7, 2019
Withdrawn, Substituted and Refiled December 18, 2019

---

**AFFIRMED**

---

Ian S. Ford and Neil Davis Thomson, both of Ford
Wallace Thomson, LLC, of Charleston, for Appellants.

M. Dawes Cooke, Jr., John William Fletcher, and
Bradley B. Banias, all of Barnwell Whaley Patterson &
Helms, LLC, of Charleston; Stephen P. Hughes, of
Howell Gibson & Hughes, PA, of Beaufort; James
Andrew Yoho, of Carlock Copeland & Stair, LLP, of
Charleston; and Andrew F. Lindemann, of Lindemann,
Davis & Hughes, PA, of Columbia, for Respondent.

---

**PER CURIAM:** Gregory L. Martin, Michael J. Frey, and Mark K. Quinn
(collectively, Appellants) appeal the circuit court's order granting summary
judgment to The Callawassie Island Members Club, Inc. We affirm.

**INTRODUCTION**

Appellants originally filed a motion to consolidate their appeals with *Callawassie
Island Members Club, Inc. v. Ronnie Dennis*. However, this court denied the
motion, proceeded with the appeal in *Dennis*, and filed an opinion reversing the
grant of summary judgment to the Club and remanding the case to the circuit court.
*See Callawassie Island Members Club, Inc. v. Dennis*, 417 S.C. 610, 790 S.E.2d
435 (Ct. App. 2016).

Following the filing of the *Dennis* opinion, this court filed three unpublished
opinions in the *Martin*, *Frey*, and *Quinn* appeals wherein we relied on our findings
in *Dennis* and affirmed in part, reversed in part, and remanded to the circuit court.
*See Callawassie Island Members Club, Inc. v. Martin*, No. 2015-000001, 2018 WL
2059555 (S.C. Ct. App. May 2, 2018); *Callawassie Island Members Club, Inc. v.*

*Frey*, No. 2015-000002, 2018 WL 2059557 (S.C. Ct. App. May 2, 2018); *Callawassie Island Members Club, Inc. v. Quinn*, No. 2015-000003, 2018 WL 2059558 (S.C. Ct. App. May 2, 2018).

After granting certiorari in *Dennis*, the supreme court reversed this court, reinstated summary judgment, and remanded for us to address the Dennises' remaining issues on appeal. *See Callawassie Island Members Club, Inc. v. Dennis*, 425 S.C. 193, 821 S.E.2d 667 (2018). Thereafter, Frey, Martin, and Quinn filed petitions for rehearing asking this court to reconsider our opinions in their cases in light of the supreme court's holding in *Dennis*. These three cases are now consolidated under the caption and case number reflected above.

**FACTS**

Frey and his wife, Grace I. Frey (collectively, the Freys); Quinn and his wife, Sherry B. Quinn (collectively, the Quinns); and Martin and his wife, Rebecca L. Martin (collectively, the Martins) applied for and became members of what was then the Callawassie Island Club, Inc. (the Island Club), a private social club on Callawassie Island that owned and operated various recreational amenities, including swimming pools, tennis facilities, a golf course, clubhouses, and dining facilities, in September 1995, July 1997, and February 2001, respectively. Appellants and their wives also purchased real property on Callawassie Island.

The application for membership Appellants and their wives executed noted membership in the Island Club was governed by the 1994 Plan for the Offering of Memberships (1994 Plan). The application for membership also stated the governing documents, which included bylaws and general club rules (Rules), might "be amended from time to time."

In 2001, after the Quinns, the Martins, and the Freys each purchased property on Callawassie Island, the Island Club transferred its assets to The Callawassie Island Members Club, Inc. (the Club), a member owned and managed organization. In conjunction with the purchase, the Club issued an amended Plan and established its own Rules and bylaws. These governing documents were also revised in 2007, 2008, 2009, 2012, 2013, and 2014.

Quinn, Frey, and Martin ceased paying dues in 2009, 2009, and 2012, respectively, and they did not sell or transfer their memberships to new members. In September 2012, the Club filed complaints against Appellants and their wives, seeking to collect delinquent dues, fees, and assessments and alleging claims of breach of

contract and quantum meruit.  The Club alleged Appellants and their wives, as Club members, had "continuing contractual obligations" to pay dues, fees, and assessments.  Appellants and their wives answered, alleging their resignations or expulsions from the Club relieved them of any further liability for dues even if their memberships had not been transferred to new members.  They contended the Club claimed Appellants remained liable for dues despite the terms of the governing documents and despite the fact that other members had been allowed to resign without an ongoing obligation to the Club.  They also raised counterclaims, alleging breach of contract, violations of sections 33-31-620 through -621 of the South Carolina Code (2006), misrepresentation, and breach of fiduciary duty.

The Club subsequently moved for summary judgment, seeking judgment in its favor on all of its claims and Appellants' counterclaims.  The Club argued Appellants' obligation to pay dues until their memberships were reissued to new members was clear and the various defenses and counterclaims raised by Appellants were unsupported by any evidence.  The Club also attached to its motion for summary judgment copies of the governing documents that had been revised in 2013 and 2014.

Appellants filed a motion opposing the Club's motion for summary judgment.  Martin, Frey, and Quinn each attached an affidavit to the motion in which they stated "the Plan for [the] Offering of Membership[s] and Club Rules did NOT obligate members to continue to pay dues, fees and assessments and other charges after 4 months of delinquency (at which point they were required to be expelled)" and "[t]he Plan [for the] Offering of Membership[s] . . . restricted a member[']s liability for dues and fees to the Club . . . to the amount of equity that membership had in the Club."  They further contended they never voted to change the requirement that a member must be expelled after four months of suspension.

While the Club's motion for summary judgment was pending, Appellants filed a motion to compel discovery, arguing the Club failed to fully respond to their discovery requests.  After holding a hearing, the circuit court granted Appellants' motion on June 5, 2014.

The circuit court held a hearing on the Club's motion for summary judgment in May 2014.  During the hearing, the Club argued there was no provision in the governing documents that relieved Appellants of their obligation to pay dues, fees, and assessments.  According to the Club, even if Appellants resigned or were expelled, they were obligated to continue making payments.  The Club further noted the language governing the Club's expulsion of members for nonpayment

was amended and now stated that a member "may" be expelled rather than "shall" be expelled.  The Club contended subsection (b) of the South Carolina Nonprofit Corporation Act of 1994 (the Nonprofit Corporation Act) did not prohibit continuing obligations after resignation if the obligations were incurred or made before resignation.  The Club argued Appellants could resign their memberships by selling their properties with their memberships.

Regarding Appellants' counterclaims, the Club contended it was entitled to summary judgment on Appellants' negligent misrepresentation claims because Appellants purchased their memberships from the Island Club, not the Club, and the transactions were at arm's length and, thus, there was no justifiable reliance.  The Club further argued it was entitled to summary judgment on Appellants' breach of contract and accounting claims because Appellants had not introduced any evidence to support their claims that their dues, fees, and assessments had been improperly handled by the Club.

Appellants moved during the summary judgment hearing to remove their wives from the action because only Appellants had applied to be members of the Club.  According to Appellants, they had entered into a contract with the Island Club, not the Club.  Appellants contended the language in the governing documents regarding expulsions was improperly changed from "shall" to "may."  Appellants argued they had a reasonable basis to believe they would be expelled after four months of nonpayment and nothing in the governing documents indicated they would have to continue to pay dues, fees, and assessments until their memberships were reissued.  According to Appellants, there was more than a mere scintilla of evidence to withstand the Club's summary judgment motion, including the fact that the Club had expelled members in the past and allowed people to concede their memberships and the fact that the governing documents stated the Club would have a lien against the membership for unpaid dues and fees at the time of resignation.  Appellants contended the term "unpaid" in the governing documents did not mean a continuing obligation but referred to the amount of unpaid dues and fees at the time of resignation.  Appellants argued the governing documents implied that a member's obligation would be limited by the amount of equity the member had in the Club.

In a June 24, 2014 order, the circuit court granted the Club's motion as to Appellants; however, it denied the Club's motion as to their wives pending the completion of additional discovery.  In the order, the circuit court stated, "It is clear under all of the relevant documents, from the time [Appellants] initially acquired [their] membership[s] until the present, that the obligation to remain a member in

good standing and pay dues, fees, assessments and other charges continues until the membership is re-issued to a new member." The court found the governing documents left "no room for contrary interpretation" and cited to various excerpts from the governing documents, including the 1994 Plan, bylaws, and Rules; the 2013 Plan; and the 2014 Rules. Although the court cited to amended versions of the governing documents, it stated that because "the obligation to pay dues, fees and assessments until [their] membership[s] were re-issued was evident in the 1994 Plan, . . . [Appellants'] contention that [the Club] may have later failed to properly notice and/or meet the voting requirements for subsequent amendments is irrelevant." According to the circuit court, the Nonprofit Corporation Act "specifically obligates a resigning member to meet any obligations incurred or commitments made before the resignation" and "specifically recognizes a corporation's right to impose obligations on its members beyond termination of the membership." The court further found additional discovery was unnecessary because Appellants "failed to demonstrate the likelihood that further discovery [would] uncover additional relevant evidence" in light of the fact that the governing documents were unambiguous and extrinsic evidence would not be admissible to determine the intent of the parties.

Regarding Appellants' counterclaims, the circuit court determined the Club neither owned nor controlled the Club's assets at the time Appellants purchased their memberships; therefore, they could not establish the necessary elements for their negligent misrepresentation claims. It also found Appellants had failed to demonstrate any right to an accounting by the Club. Finally, the circuit court awarded attorney's fees to the Club.

Appellants filed motions to reconsider. The circuit court subsequently denied Appellants' motions to reconsider and affirmed summary judgment in favor of the Club. On appeal to this court, Appellants argue the circuit court erred in (1) failing to apply the "scintilla of evidence" standard to the Club's motion for summary judgment, (2) disregarding the voluminous evidence they presented in opposing the Club's motion for summary judgment, (3) awarding damages under incorrect contract provisions and under incorrect interpretations of the applicable documents, (4) granting summary judgment in favor of the Club on their counterclaims when they submitted evidence raising numerous issues of material fact, and (5) granting summary judgment prematurely because they did not have a full and fair opportunity to complete discovery.

**STANDARD OF REVIEW**

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard that governs the circuit court under Rule 56(c), SCRCP, which provides that summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). In determining whether a genuine issue of material fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the nonmoving party. *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003). To withstand a motion for summary judgment in cases applying the preponderance of the evidence burden of proof, the nonmoving party is only required to submit a mere scintilla of evidence. *Hancock v. Mid-South Mgmt. Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009).

## LAW/ANALYSIS

### I.      Disregarding Evidence

Appellants argue the circuit court disregarded genuine issues of material fact, and, therefore, erred in granting summary judgment in favor of the Club.

#### A. Contract

Appellants first contend the Club failed to prove a contract existed because they applied for membership in a different organization, the Island Club. We hold a question of fact does not exist as to whether Appellants were members of the Club. The evidence in the record supports the circuit court's finding that Appellants' memberships in the Island Club transferred to the Club upon the sale of the club. The 1994 Plan expressly contemplated the transfer of the Island Club's assets to the members, which occurred in 2001 when the Club assumed control. Appellants also continued paying dues and receiving the benefits of membership well after the Club took control of the club.

#### B. Governing Documents

Appellants contend the circuit court disregarded (1) the differences among resigned, terminated, and expelled members; (2) the abundant evidence that they had been expelled by the Club, which included testimony from the Club's representatives and other club members regarding the expulsion process and documents showing the Club had previously expelled other members; (3) evidence that the governing documents had been improperly changed by the Club to prohibit

people from exiting the Club; and (4) the abundant evidence that they had no obligation beyond their equity interests in their club memberships.

### 1. Resignation

Appellants contend there are genuine disputes as to (1) which governing documents are controlling and (2) the interpretation and application of the governing documents as they relate to their obligations to pay dues.

In *Dennis*, this court reversed the grant of summary judgment to the Club after determining the governing documents were ambiguous regarding whether club members are liable for dues accruing after resignation. 417 S.C. 610, 616–17, 790 S.E.2d 435, 438 (Ct. App. 2016). This court noted the 1994 Rules provided that a member could terminate membership in the Club by delivering written notice of termination to the Club's secretary but would remain liable for any *unpaid* club account, membership dues and charges. *Id.* at 616, 790 S.E.2d at 438. However, this court found this language different from that in other documents. *Id.* at 616–17, 790 S.E.2d at 438.

Subsequently, the supreme court reversed this court and found the governing documents were unambiguous. *Dennis*, 425 S.C. at 200, 821 S.E.2d at 670. Citing section 5.11 of the 2008 Plan, the court held the Club's governing documents unambiguously provide that club members are obligated to continue to pay all membership dues, fees, and other charges after resignation until their membership is reissued.

Because the governing documents at issue in *Dennis* are the same documents at issue in the instant cases, we affirm the grant of summary judgment to the Club on its claims against Appellants.

### 2. Expulsion

Appellants also contend their liability for unpaid dues ended after four months of delinquency by the mandatory process of expulsion.

In *Dennis*, this court, relying on the 2001 Rules, found there was "an ambiguity as to whether Appellants were entitled to expulsion and thus exposed to a maximum liability of four months' of unpaid dues (plus any accrued expenses)." *Dennis*, 417 S.C. at 617–18, 790 S.E.2d at 439. The 2001 Rules provide the following:

> Any member whose account is delinquent for sixty (60) days from the statement date *may* be suspended by the Board of Directors. . . . Any member whose account is not settled within the four (4) months' period following suspension *shall* be expelled from the Club.

(emphasis added). This court also considered the testimony of the membership coordinator for the Island Club and the Club, Ellen Padgett, who stated that she understood the above provision to mean that after four months of delinquency, a member would lose his or her membership. *Id.*

Like in *Dennis*, the record in the instant cases also contains the testimony of Padgett that she understood the Rules to mean that if a member did not settle his account in four months, he would lose his membership. There is also evidence Appellants had been suspended by the Club before the initiation of the Club's action against them and thus, should have been expelled under the 2001 Rules. The record contains a November 2011 list of suspended members that includes both Frey and Quinn. Additionally, the Club's General Manager, Jeff Spencer, stated in an affidavit that the Club had "been forced, owing to non-payment, to suspend" the membership rights and privileges of the Martins, the Freys, and the Quinns. However, the above provision from the 2001 Rules was amended in 2007 and the mandatory expulsion language was removed. It now reads as follows:

> Any member whose account is delinquent for sixty (60) days from the statement date *may* be suspended by the Board of Directors. . . . Any member whose account is not settled within the four (4) month period following suspension *may* be expelled from the Club.[1]

(emphasis added).

Pursuant to this revision, the Club would not have been obligated to expel Appellants despite their suspensions. However, Appellants contend the governing documents were improperly changed by the Club to prohibit people from exiting the Club. They point to the following provision, which prohibits modification of the governing document unless a majority of the members votes in favor of it:

2007 Plan:

---

[1] An identical provision was included in the 2009 Rules.

> The Board of Directors may, in its sole discretion, amend or modify this Plan from time to time, so long as such amendments or modifications do not materially and adversely affect the rights of the Equity Members. Any amendment or modification which materially and adversely affects the rights of the Equity Members must be approved by a majority of the votes held by the Equity Members so affected.

Frey, Quinn, and Martin each stated in an affidavit that they never voted to change the requirement that a member must be expelled after four months of suspension and stated they were not aware of any vote to do so.

We disagree with Appellants' assertion that the governing documents were improperly changed. The Appellants rely on language in the Plan rather than the amendment provision in the Rules. According to the 2007 and 2009 Rules,

> [t]he Board of Directors reserves the right to amend or modify these rules when necessary and will notify the membership of such changes. Any such amendments or modifications shall be subject to and controlled by the applicable provisions of the By-Laws and the Plan for the Offering of Memberships.

The Rules do not contain any provisions requiring a vote of the full membership to amend. Thus, the evidence does not raise a genuine issue of material fact regarding whether the governing documents were properly changed and whether the mandatory expulsion provision was still in effect at the time of Appellants' suspensions from the Club.

## C. Nonprofit Corporation Act

According to Appellants, permitting the Club to continue to levy dues, fees, assessments, and other charges against Appellants is a violation of the Nonprofit Corporation Act because it eliminates a person's right to resign from a nonprofit organization; it also conflicts with the governing documents, which do not state a member is responsible for dues and other charges after termination or expulsion. Appellants argue the Club "cannot expel someone, bar them from all Club

facilities, keep their equity contribution—and still demand that they pay dues, fees, assessments, and other charges for years to come."

Section 33-31-620 of the Act states that "[a] member may resign at any time" and "[t]he resignation of a member does not relieve the member from any obligations the member may have to the corporation as a result of obligations incurred or commitments made before the resignation."  S.C. Code Ann. § 33-31-620 (2006).

In *Dennis*, this court addressed whether a member could be liable for continuing obligations post-resignation under the Act.  417 S.C. at 618, 790 S.E.2d at 439.  We stated,

> Section 33-31-620 obligates resigned members to pay any dues incurred *before* resignation.  This section does not require resigned members to continue to pay any dues that accrue *after* resignation.  To do so, we believe, would create an unreasonable situation in which clubs could refuse to allow a member to ever terminate [his or her] membership obligations.

*Id.*  This court further found "section 33-31-620 protects club members from such continuing liability after resignation."  *Id.* at 619, 790 S.E.2d at 439.

The supreme court found this court's reasoning ignored subsection 33-31-620(b), which contemplates two categories of debt for which a resigned member continues to be responsible after resignation: (1) "obligations incurred . . . before resignation" and (2) "commitments made before resignation."  *Dennis*, 425 S.C. at 205, 821 S.E.2d at 673 (quoting S.C. Code Ann. § 33-31-620(b)(2006)).  The supreme court held,

> [t]he dues, fees, and other charges the Dennises owe fall into the "commitments made" category.  The 1994 Plan—which was in effect when the Dennises joined— and the 2008 Plan—which was in effect when the Dennises resigned—both provide that a member who resigns from the Club must continue to pay membership dues, fees, and other charges "until his or her equity membership is reissued by the Club."  When the Dennises joined the club, they made a commitment to continue to pay dues, fees, and other charges during the

period of time after resignation and before reissuance of the membership. *Therefore, we find the requirement that members continue to pay dues, fees, and other charges after resignation until their membership is reissued is not prohibited by section 33-31-620.*

*Id.* at 205–06, 821 S.E.2d at 673 (emphasis added).

In light of the supreme court's holding in *Dennis*, we have no choice but to hold the requirement that members continue to pay dues, fees, and other charges after resignation until their membership is reissued is not prohibited by the Act.

## II.    Damages/Attorney's Fees

Appellants argue the circuit court erred in awarding damages to the Club because the awards were based on the erroneous conclusion that Appellants were obligated, on an ongoing basis, to continue to pay all dues and charges until their memberships were reissued. Appellants contend that based on the governing documents, their damages should be capped at forfeiture of their equity contributions. Finally, Appellants contend the circuit court erred in awarding attorney's fees to the Club because the governing documents only allow for the recovery of attorney's fees if the Club elects to foreclose its lien on the membership, not if it sues for a money judgment.

### A. Damages

The circuit court found the Martins owed $33,300.11 in unpaid dues, fees, and other charges including interest. Additionally, the court found the Freys owed $58,744.23 and the Quinns owed $66,658.09.

In *Dennis*, the supreme court found club members are obligated to continue to pay dues, fees, and other charges after resignation until their memberships are reissued. The opinion also contains a dialogue between the majority and the dissent regarding the repercussions of the court's decision on the liability of club members. In the dissent, Justice Hearn expresses concern that the majority's opinion could lead to perpetual liability on the part of club members. The majority limited its holding by stating it was "*not* deciding whether the governing documents could support perpetual liability . . . ." *Dennis* at 202, 821 S.E.2d at 627.

We do not believe the language of the governing documents creates a cap on a resigned member's liability for unpaid dues and fees. Pursuant to the 2008 Plan,

> An Equity Member who is on the waiting list to sell his/her membership will be obligated to continue to pay the Club all dues, fees and other Charges associated with his/her membership until his/her Equity Membership is reissued by the Club. *Any unpaid dues, fees and other Charges plus interest accrued under the then prevailing terms of the General Club Rules will be deducted from the amount to be paid to the resigned member upon the reissuance of her/his resigned Equity Membership.*

(emphasis added). While this provision provides unpaid dues will be deducted from the amount paid for the equity membership, it does not provide that the maximum damages the Club can recover is capped at the amount paid for the membership. Furthermore, the governing documents do not contain any provisions that preclude the Club from collecting by other means the amounts in excess of the value of the equity membership. Accordingly, we find the circuit court did not err in awarding the Club damages.[2]

### B. Attorney's Fees

The circuit court ordered the Martins to pay $8,630.13 in attorney's fees. In addition, the court ordered the Freys to pay $9,132.23 and the Quinns to pay $10,186.98 in attorney's fees.

---

[2] The governing documents neither authorize nor preclude the collection of dues and fees above the amount paid for an equity club membership. This apparent ambiguity, if read to authorize the collection of dues, could require club members to pay dues in perpetuity. The supreme court, however, specifically stated it was not ruling on the issue of perpetuity. Yet, the supreme court determined the membership documents unambiguously require the Dennises to continue to pay dues until their membership is reissued. Based on testimony presented by both sides, it appears the reissuance of the membership will almost assuredly never happen. As noted, the supreme court declined to call this obligation without a foreseeable end a "perpetual liability." Regardless of what term is used, it appears this is an obligation which could last forever.

Appellants contend the circuit court erred in awarding attorney's fees to the Club because the governing documents only allow for the recovery of attorney's fees if the Club elects to foreclose its lien on the membership, not if it sues for a money judgment.

We find this argument is unpreserved. Prior to the circuit court's grant of summary judgment to the Club, Appellants only questioned the timeliness and reasonableness of the attorney's fees affidavits. Appellants challenged the Club's contractual authority to collect attorney's fees at the hearing on Appellants' motions to reconsider; however, an issue may not be raised for the first time in a motion to reconsider. *See Kiawah Prop. Owners Grp. v. Pub. Serv. Comm'n of S.C.*, 359 S.C. 105, 113, 597 S.E.2d 145, 149 (2004) (holding a party may not raise an issue in a motion to reconsider, alter, or amend a judgment that could have been presented prior to the judgment).

### III. Counterclaims

#### A. Breach of Contract

We affirm the circuit court's grant of summary judgment to the Club on Appellants' breach of contract counterclaims. Our decision is based on the interrelated nature between Appellants' breach of contract counterclaims and the Club's breach of contract claim and, as stated above, the fact that our supreme court found the relevant provisions of the governing documents are unambiguous.

#### B. Negligent Misrepresentation

We affirm the circuit court's grant of summary judgment to the Club on Appellants' negligent misrepresentation claims.

> To establish liability for negligent misrepresentation, the plaintiff must show (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the representation; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary

> loss as the proximate result of his reliance upon the
> representation.

*Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 407, 581 S.E.2d 161, 166 (2003) (quotations omitted).

Appellants state in their briefs that they "do not maintain that the prior entity, [the Island Club], by and through its governing documents, conveyed these false representations." Instead, they argue "[t]he false representations occurred after the Club took over in 2001" and consisted of the Club providing "methods for certain members to exit the Club without owing more than their equity contribution." We find such acts by the Club are not sufficient to support these counterclaims because allowing certain members to leave the Club is not a *false* representation and it was not a representation that was made to Appellants. *See id.* (stating that to establish a claim for negligent misrepresentation, the plaintiff must show "the defendant made a *false* representation *to the plaintiff*") (emphases added)). Accordingly, we find Appellants failed to provide sufficient evidence to support their claims, and the circuit court did not err in granting summary judgment to the Club on these counterclaims. *See* Rule 56(c), SCRCP (stating summary judgment is proper when "there is no genuine issue as to any material fact and. . . the moving party is entitled to a judgment as a matter of law").

### C. Quinn's and Frey's Section 33-31-621(d) Issue

Quinn and Frey argue the circuit court erred in dismissing their statutory violation claims because the Club brought its breach of contract action after the one-year statute of limitations of section 33-31-621(d) of the South Carolina Code (2006). That section states, "A proceeding challenging an expulsion, suspension, or termination, including a proceeding in which defective notice is alleged, must be commenced within one year after the effective date of the expulsion, suspension, or termination." *Id*

To the extent Quinn and Frey are contending this is a separate counterclaim, we find this issue is unpreserved. *See Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 23, 602 S.E.2d 772, 779–80 (2004) ("Issues and arguments are preserved for appellate review only when they are raised to and ruled on by the lower court."). The circuit court did not address this issue in its order granting summary judgment to the Club, and Quinn and Frey did not raise it in their motions to reconsider. Accordingly, we affirm the circuit court's ruling on this issue.

## IV. Discovery

Appellants argue the circuit court erred in granting summary judgment before they had a full and fair opportunity to complete discovery. We find the circuit court acted within its discretion in granting summary judgment in light of the discovery issues raised by Appellants. As noted by the Club, the litigation was ongoing for two years and the circuit court found the contract was unambiguous, a ruling which was affirmed by the supreme court in *Dennis*.

## V. Remaining Issues

The Club raises several additional sustaining grounds, which we decline to address. *See I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) ("It is within the appellate court's discretion whether to address any additional sustaining grounds.").

## CONCLUSION

We affirm the circuit court's grant of summary judgment to the Club.

**AFFIRMED.**

**LOCKEMY, C.J., and SHORT and MCDONALD, JJ., concur.**