After careful consideration of the petition for rehearing, the Court is unable to discover any material fact or principle of law that has been overlooked or disregarded. The petition for rehearing is denied. However, we did overlook the procedural fact that the court of appeals found it unnecessary to address all issues raised before it, so we substitute the attached revised opinion remanding this case to the court of appeals to address the other issues. In all other respects, the opinion is unchanged.
The petition for rehearing is denied.
/s/ John W. Kittredge, J.
**196 /s/ John Cannon Few, J.
/s/ George C. James, Jr., J.
We would grant the petition for rehearing.
/s/ Donald W. Beatty, C.J.
/s/ Kaye G. Hearn, J.
The circuit court granted summary judgment to The Callawassie Island Members Club on the basis that its membership documents clearly and unambiguously require members to continue paying their dues until their membership is reissued, even after their resignation. The court of appeals reversed. We reverse the court of appeals and reinstate the summary judgment for all unpaid dues, fees, and other charges. Because Respondents raised other issues to the court of appeals that have not yet been addressed, we remand to the court of appeals for further proceedings consistent with this opinion.
I. Facts and Procedural History
In 1999, Ronnie and Jeanette Dennis purchased property on Callawassie Island. At that time, the Dennises joined a private club known as the Callawassie Island Club, and paid $31,000 to become "equity members." In their application, the Dennises agreed their membership would be governed by the "Plan for the Offering of Memberships in The Callawassie Island Club," which the developer of Callawassie Island created in 1994. The 1994 Plan included exhibits labeled as Bylaws and Rules. The 1994 Plan stated, "An equity member who has resigned from the Club will be obligated to continue to pay dues and food and beverage minimums to the Club until his or her equity membership is reissued by the Club." Similarly, the 1994 Bylaws stated, "Any equity member may resign from the Club by giving written notice to the Secretary. Dues, fees, and charges shall accrue against a resigned equity membership until *669 the resigned equity membership is reissued by the Club."
The 1994 Plan contemplated that the members would eventually take over the assets and operation of the Island Club. In 2001, the members of the Island Club formed The Callawassie Island Members Club, Inc. for this purpose. The Members Club assumed ownership and operations of all Island Club **197 amenities, including a golf course and driving range, tennis courts, a swimming pool, and a clubhouse. The members of the Island Club-including the Dennises-received a membership certificate to the Members Club and continued to enjoy the benefits of membership. The Members Club established its own Bylaws, Plan, and Rules in 2001, each of which was amended several times over the years.
In 2010, the Dennises decided they no longer wanted to be in the Members Club, so they submitted a "letter of resignation" and stopped making all payments. Those payments included $634 per month for the membership, "special assessments" that totaled $100 per month, and yearly food and beverage minimums of $1,000. In 2011, the Members Club filed a breach of contract action against the Dennises, alleging the unambiguous terms of the membership documents required the Dennises to continue to pay their membership dues, fees, and other charges until their membership is reissued. The Dennises denied any liability, alleging they were told by a Members Club manager that their maximum liability would be only four months of dues, because after four months of not paying, they would be expelled. The Dennises also alleged the membership arrangement violates the South Carolina Nonprofit Corporation Act. See S.C. Code Ann. §§ 33-31-101 to -1708 (2006 & Supp. 2017).
The Members Club filed a motion for summary judgment. The circuit court held a hearing and issued an order granting summary judgment. The court found the membership documents unambiguously require a resigned member to continue to pay dues, fees, and other charges until the membership is reissued. The court rejected the Dennises' arguments relating to the Nonprofit Corporation Act.
The Dennises appealed, and the court of appeals reversed on both issues. The Callawassie Island Members Club, Inc. v. Dennis , 417 S.C. 610, 790 S.E.2d 435 (Ct. App. 2016). The court of appeals found there was "some ambiguity in the governing documents as to whether club members are liable for dues accruing after resignation." 417 S.C. at 616, 790 S.E.2d at 438. In addition, the court of appeals found the provisions of the documents that require the Dennises to continue to pay their membership dues after resignation violate **198 section 33-31-620 of the Nonprofit Corporation Act. 417 S.C. at 618-19, 790 S.E.2d at 439. The court of appeals found it unnecessary to address the other issues raised on appeal, 417 S.C. at 619 n.5, 790 S.E.2d at 440 n.5, and remanded to the circuit court for trial, 417 S.C. at 619, 790 S.E.2d at 440. The Members Club filed a petition for a writ of certiorari, which we granted.
II. Discussion
Under Rule 56(c) of the South Carolina Rules of Civil Procedure, summary judgment is proper when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The questions before us in this appeal are questions of law. See S.C. Dep't of Nat. Res. v. Town of McClellanville , 345 S.C. 617, 623, 550 S.E.2d 299, 302-03 (2001) ("It is a question of law for the court whether the language of a contract is ambiguous."); Town of Summerville v. City of N. Charleston , 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008) ("Determining the proper interpretation of a statute is a question of law ...."). We review questions of law de novo. 378 S.C. at 110, 662 S.E.2d at 41. Because the ambiguity of contracts and statutes are questions of law, we do not view the evidence in any particular light. Rather, we read the contract or statute to determine if its meaning is clear and unambiguous. See Town of McClellanville , 345 S.C. at 623, 550 S.E.2d at 302 ("A contract is ambiguous when the terms of the contract are reasonably susceptible of more than one interpretation.").
*670 A. The Membership Arrangement
We begin our analysis of this case with a general discussion of the membership arrangement and the membership documents that govern that arrangement. Three documents governed the Dennises' membership in the Island Club and the Members Club-the Bylaws, the Plan, and the Rules. The three documents reference each other and are intended to operate together. When the Dennises first joined the Island Club, the 1994 versions of those documents applied. However, these documents were amended several times over the years, **199 as permitted by the Bylaws, the Plan, and the Rules.[1] The first amendments occurred when the club assets were transferred from the Island Club to the Members Club in 2001, at which point the Members Club enacted its own Plan, Bylaws, and Rules.[2] All three documents were further amended several times during the 2000s. There is no evidence that the various amendments to the documents were in any way contrary to the Bylaws, Plan, and Rules in place at the time of the amendments. When the Dennises resigned in 2010, the membership documents in effect were the 2008 Plan, the 2009 Bylaws, and the 2009 Rules.[3]
B. Ambiguity of the Membership Documents
The Dennises argue these documents are ambiguous as to whether they are obligated to continue to pay membership dues, fees, and other charges after resignation, and therefore **200 the circuit court erred in granting summary judgment. We disagree.
Section 5.11 of the 2008 Plan, entitled "Payment of Dues and Other Charges by Resigning Members," states,
An Equity Member who is on the waiting list to sell his/her membership will be obligated to continue to pay to the Club all dues, fees and other charges associated with his/her membership until his/her Equity Membership is reissued by the Club . Any unpaid dues, fees and other charges plus interest accrued under the then prevailing terms of the Rules will be deducted from the amount to be paid to the resigned member upon the reissuance of his/her resigned Equity Membership.
This language unambiguously provides the Dennises are obligated to continue to pay all membership dues, fees, and other charges after resignation until their membership is reissued. There are no provisions in the 2009 Bylaws or 2009 Rules that contradict this. Also, although not dispositive of the issue, this language is nearly identical to the provisions in the 1994 Plan and Bylaws that relate to continued payment after resignation.
In finding there was ambiguity in the membership documents, the court of appeals focused on the fact the language in the 1994 Rules governing "termination" was different than the language in the 1994 Bylaws and 1994 Plan governing "resignation." 417 S.C. at 616, 790 S.E.2d at 438. In particular, the *671 court of appeals referenced the 1994 Rules that state, "Any member may terminate membership in the Club .... Notwithstanding termination, the member shall remain liable for any unpaid club account, membership dues and charges (including food and beverage minimums)." Id. In other words, the 1994 Rules do not contain any "until reissued" provision regarding termination, while the 1994 Bylaws and Plan do contain that language regarding resignation. The court of appeals found further ambiguity based on the fact the 2009 Rules "termination" provision did not define the term "unpaid." 417 S.C. at 617, 790 S.E.2d at 438.
The court of appeals was incorrect for several reasons. First, any difference between the language of a "termination" provision and a "resignation" provision is not sufficient to **201 create an ambiguity. The documents provide that termination and resignation are two separate events. Ronnie Dennis unequivocally testified he resigned by submitting a "letter of resignation." Thus, the language in the "termination" provisions of the 1994 and 2009 Rules is irrelevant.
Second, even if we were to treat the "termination" provision and the "resignation" provision as governing the same event, there is no ambiguity. The 1994 Rules state, "All rules and regulations contained herein shall be subject to and controlled by the applicable provisions of the By-Laws." The 1994 Rules, therefore, are subject to the 1994 Bylaws, which unambiguously state that "dues, fees, and charges shall accrue against a resigned equity membership until the resigned equity membership is reissued by the Club." In addition, the 2009 Rules, which were in place when the Dennises resigned, state, "Any member may terminate membership in the Club .... Notwithstanding termination, the member shall remain liable for any unpaid club account, membership dues and charges (including any food and beverage minimums) until the membership is sold."
Finally, the term "unpaid" in the 2009 Rules is not ambiguous, despite the fact it is not defined. The court of appeals explained its interpretation of this provision by stating, "It is unclear whether the language relating to unpaid dues refers to unpaid dues owed at the time of resignation or unpaid dues accruing before and after resignation." 417 S.C. at 617, 790 S.E.2d at 438. We find there is nothing unclear. "Unpaid" means any payment the Dennises are obligated to make according to the terms of the membership documents that has not been made. We have already discussed that the membership documents include obligations to pay before and after the date of resignation. The Dennises admit they have not made the payments. According to the plain language of the membership documents, the Dennises' unpaid dues, fees, and other charges are "unpaid."
The plain language of the applicable provisions of the membership documents expresses the intent with which these provisions were written. See 11 Williston on Contracts § 32:7 (4th ed. 2012) ("In construing a contract, a court seeks to ascertain the meaning of the contract at the time and place of **202 its execution."). The provisions of the membership documents that require members to continue to pay their membership dues until their membership is reissued are necessary to ensure the Club will remain viable in the future. When the Dennises entered into this membership agreement, they accepted the obligation to continue to pay their membership dues even under difficult circumstances, such as a financial downturn, a health crisis, or a sudden disinterest in being members in the Club. In doing so, however, they also received the benefit of knowing that if other members experienced those circumstances, the other members would likewise be obligated to continue to make their payments. Without these provisions, members could default on their payments whenever it became convenient to do so, and the non-defaulting members would be forced to absorb the costs. Therefore, these provisions are not "unfair" or "unreasonable," but rather are the very feature of the membership documents that enables the Dennises and other members to sustain a viable Members' Club on Callawassie Island, which in turn increases the value of their membership and their property.
The dissent argues that "taking the majority's view to its logical end, this is an obligation that could extend beyond a member's *672 lifetime," and we have rendered a "harsh result." In response to the "logical end" argument, we point out that-as in all cases before this Court-we decide only the issues before us in this case. The "logical end" of our analysis goes no further than required by the four corners of the governing documents in this case when applied to the facts of this case. The Dennises resigned on November 1, 2010, and the summary judgment order was filed on June 10, 2014. Therefore, the summary judgment we affirm is for less than four years of unpaid dues. We are not deciding whether the governing documents could support perpetual liability under these or any other facts.
In suggesting we have rendered a "harsh result"-a factual analysis we should not conduct in this case because the governing documents are unambiguous-the dissent ignores several important facts. First, the Dennises' membership in the Club-and thus their obligation to pay membership dues, fees, and other charges-is tied to their ownership of a lot and house on Callawassie Island. If the Dennises truly wish to **203 avoid paying membership dues, they may sell their house. In addition, Callawassie Island is a private resort community developed around the property owners' use of the amenities paid for by these dues. The Dennises purchased their exclusive home there in 1999 for $590,000. They have chosen not to sell, but are instead attempting to keep their home on this resort island without having to pay a property owner's share of the amenities.
When reading unambiguous contracts, we should not normally concern ourselves with the fairness of the result required by the terms of the contract. The Dennises have not asked the circuit court, the court of appeals, nor this Court to decide the case based on any alleged harshness of having to pay dues. Because the dissent has made it an issue, however, we note our decision by no means renders a harsh result. Rather, this is precisely the result to which these sophisticated purchasers of a resort home agreed when they decided to purchase the property and abide by the terms of the governing documents.
C. Parol Evidence
The Dennises urge us to consider information they allege was conveyed to them orally at the time they joined the Island Club. In particular, the Dennises claim Ellen Padgett-who served as the membership coordinator for the club when the Dennises joined-told them that if they chose to stop making their membership payments, they would be liable only for four months of payments before they would be expelled from the club. At oral argument, the Dennises also noted the testimony of Lindsey Cooler, a subsequent membership coordinator, who testified at a deposition that the Members Club does not allow members to resign.
First, because we find the terms of the membership documents are unambiguous, no statements regarding the terms of those documents may be used to vary their otherwise clear meaning. See Jordan v. Sec. Grp., Inc. , 311 S.C. 227, 230, 428 S.E.2d 705, 707 (1993) ("Where the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect."); Gilliland v. Elmwood Props. , 301 S.C. 295, 302, 391 S.E.2d 577, 581 (1990) ("The parol evidence rule prevents the introduction of extrinsic **204 evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary or explain the written instrument."); see also 11 Williston on Contracts § 33:1 (4th ed. 2012) (stating the parol evidence rule "prohibits the admission of evidence of prior or contemporaneous oral agreements, or prior written agreements, whose effect is to add to, vary, modify, or contradict the terms of a writing which the parties intend to be a final, complete, and exclusive statement of their agreement."). Thus, under the circumstances of this case, Padgett's statement about expulsion and Cooler's statement about resignation are irrelevant.
The discussion about expulsion does, however, draw us to the terms of the membership documents that deal with expulsion, and the court of appeals' interpretation of those terms. Relying on the 2001 Rules, the court of appeals found there was "an ambiguity as *673 to whether Appellants were entitled to expulsion and thus exposed to a maximum liability of four months' of unpaid dues (plus any accrued expenses)." 417 S.C. at 617-18, 790 S.E.2d at 439.
We believe the court of appeals erred in finding this provision created an ambiguity. First, the 2001 Rules were not in effect when the Dennises resigned in 2010. Even if those Rules did apply, however, the Rules state, "Any member whose account is delinquent for sixty (60) days from the statement date may be suspended by the Board of Directors. ... Any member whose account is not settled within the four (4) months' period following suspension shall be expelled from the Club." This provision makes it clear that mandatory expulsion arises only after the board has suspended a member, which is discretionary with the board. Here, no suspension ever occurred; the Dennises resigned. Therefore, the four-month suspension period that leads to expulsion was never triggered.
Second, the 2009 Rules, which were in effect when the Dennises resigned, do not make expulsion mandatory under any condition. The 2009 Rules state, "The Board of Directors may suspend a member ... from some or all club privileges for a period up to one year." The 2009 Rules further provide, "The Board of Directors may ... request the resignation of any member of the club for cause deemed sufficient to the **205 Board. If the member does not resign at the request of the Board, the member may be expelled by the Board." We find there is no ambiguity as to expulsion from the Members Club.
D. Nonprofit Corporation Act
The Dennises argue the provisions in the membership documents that require them to continue to pay dues, fees, and other charges after resignation violate the Nonprofit Corporation Act. They rely specifically on subsection 33-31-620(a) of the Nonprofit Corporation Act, which provides, "A member may resign at any time." S.C. Code Ann. § 33-31-620(a) (2006). The Dennises contend the membership documents prevent them from actually "resigning" because they require them to continue to pay dues, fees, and other charges even after they are no longer in the Members Club. The court of appeals agreed, and found "[s]ection 33-31-620 obligates resigned members to pay any dues incurred before resignation," but "does not require resigned members to continue to pay any dues that accrue after resignation." 417 S.C. at 618, 790 S.E.2d at 439. The court of appeals explained that requiring a member to continue to pay dues that accrue after resignation "would create an unreasonable situation in which clubs could refuse to allow a member to ever terminate their membership obligations."[4] Id.
The court of appeals' reasoning ignores subsection 33-31-620(b), which provides, "The resignation of a member does not relieve the member from any obligations the member may have to the corporation as a result of obligations incurred or commitments made before resignation." S.C. Code Ann. § 33-31-620(b) (2006). Subsection 33-31-620(b) contemplates two categories of debt for which a resigned member continues to be responsible after resignation: (1) "obligations incurred ... before resignation" and (2) "commitments made before resignation." S.C. Code Ann. § 33-31-620(b). The dues, fees, and other charges the Dennises owe fall into the "commitments made" category. The 1994 Plan-which was in effect when the Dennises joined-and the 2008 Plan-which was in effect when the Dennises resigned-both provide that a member who resigns from the Club must continue to pay membership **206 dues, fees, and other charges "until his or her equity membership is reissued by the Club." When the Dennises joined the club, they made a commitment to continue to pay dues, fees, and other charges during the period of time after resignation and before reissuance of the membership. Therefore, we find the requirement that members continue to pay dues, fees, and other charges after resignation until their membership is reissued is not prohibited by section 33-31-620.
III. Conclusion
The court of appeals' opinion is REVERSED and the circuit court's order granting summary judgment is reinstated.
*674 We remand to the court of appeals to address the remaining issues.
KITTREDGE and JAMES, JJ., concur. HEARN, J., dissenting in a separate opinion in which BEATTY, C.J., concurs.
I respectfully dissent, as I believe the court of appeals was correct that the governing documents are ambiguous and the Club's interpretation violates the South Carolina Nonprofit Corporation Act (the Act).
The majority ostensibly permits the Dennises to resign from the Club, yet holds them responsible for the same obligations as an active member, including ever-accumulating dues and fees, only allowing them to escape that obligation in the unlikely event their membership is reissued. This harsh result is one I do not believe the governing documents require, and certainly not as a matter of law.
I. Controlling Documents
The majority contends the Club's 2008 Plan, 2009 Bylaws, and 2009 Rules unambiguously require a resigning member to continue to pay-potentially for that member's lifetime and beyond-dues, fees, and food and beverage minimums unless their membership is reissued. The majority's categorical reliance on these documents is stunning because neither the trial judge nor the Club has identified them as the controlling documents. In fact, the Club alleges in its complaint that only the contracts signed by the Dennises, which reference the **207 1994 plan, and provisions pertaining to the property owners' association-a separate entity-form the basis of the parties' contract. Importantly, in its motion for summary judgment, the Club specifically pointed to the 2001 plan, general club rules, and bylaws, making only a vague reference to "all amendments thereto." Certainly, as the moving party, the Club is required to identify with particularity which documents comprise the alleged contract. In my view, if the Club cannot do this-and heretofore in this litigation it has not-it is not entitled to summary judgment.
Even throughout this appeal, the Club has been inconsistent in identifying which documents form the contract between the parties, and has instead relied on different versions of the plan, bylaws, and rules at various stages. For example, in its brief to the court of appeals, the Club suggested all of the numerous documents together form the contract, and argued they must be read as a whole. However, in its petition for rehearing to the court of appeals, the Club argued the 1994 plan, bylaws, and club rules unambiguously entitle it to judgment as a matter of law. Thereafter, in its brief to this Court, the Club never stated with specificity which documents entitle it to judgment as a matter of law, instead merely asserting, "Several controlling documents, which have been amended and revised over the years, govern membership in the Club." While the Club does delineate the order of primacy as "the CIPOA covenants, CIMC's By-Laws, its Membership Plan, and its General Club Rules," it never set forth which version of each subset controls. Thus, I disagree with the majority's pronouncement that the 2008 Plan, 2009 Bylaws, and 2009 Rules control when the Club itself has never argued that.[5]
II. Ambiguities
In addition to believing that the Club has not carried its burden to demonstrate what documents form the contract **208 between these parties, I agree with the court of appeals that the documents are ambiguous on their face. To begin, under Rule 14.2.1 of the 2001 Rules, the rules upon which the Club premised its motion for summary judgment,
Any member may terminate membership in the Club by delivering to the Membership Director written notice of termination *675 in accordance with the Plan for the Offering of Club Memberships. Notwithstanding termination, the members shall remain liable for any unpaid club account, membership dues and charges (including any food and beverage minimums).
According to the Club, this provision is subordinate to the bylaws and membership plan, so even if the term "unpaid" only referred to unpaid dues at the time of resignation, the Dennises are still required to pay future dues. However, conspicuously absent from this provision is any language indicating the dues and charges continue to accrue after resignation "until the membership is reissued." The 2009 Rules contained a similar termination provision, and added language that the member remains liable "until the membership is sold." As the court of appeals noted, the governing documents do not define the term "unpaid," and viewing the evidence in the light most favorable to the Dennises as we are required to do, the clause is ambiguous because it is unclear whether a resigned member is liable for unpaid dues outstanding at the time of resignation or for dues accruing before and after resignation. Moreover, Rule 14.2.1 states that upon termination, the member "shall remain liable" for unpaid club accounts and dues. The use of the words "remain" and "unpaid" support the Dennises' interpretation that the provision refers to charges and dues which have already been accrued-not future charges-for a member cannot remain liable for dues and charges which have not yet come into existence. In my view, the better interpretation is to impose liability on the member for previously-incurred dues and charges, rather than **209 future dues and charges in perpetuity; however, at the least, the two contrary constructions illustrate the ambiguity in this agreement between the parties. See S.C. Dep't of Nat. Res. v. Town of McClellanville , 345 S.C. 617, 623, 550 S.E.2d 299, 302 (2001) ("A contract is ambiguous when the terms of the contract are reasonably susceptible of more than one interpretation."); Cafe Associates, Ltd. v. Gerngross , 305 S.C. 6, 9, 406 S.E.2d 162, 164 (1991) ("As a general rule, written contracts are to be construed by the Court; but where a contract is ambiguous or capable of more than one construction, the question of what the parties intended becomes one of fact, and the question should be submitted to the jury.").
Moreover, the Dennises point to the understanding conveyed to them by Ellen Padgett, the membership director when they joined, who assured them the maximum liability for unpaid dues would be four months. Even though Ms. Padgett confirmed that understanding in her deposition testimony, the majority completely discounts this testimony, reasoning that parol evidence to vary this purportedly unambiguous contract is inadmissible. Because I disagree that the documents are unambiguous, I believe this evidence is relevant and further supports the denial of summary judgment. Penton v. J.F. Cleckley & Co. , 326 S.C. 275, 280, 486 S.E.2d 742, 745 (1997) ("[W]here a contract is ambiguous, parol evidence is admissible to ascertain the true meaning and intent of the parties.").
Finally, I believe it is worth noting that according to the 1994 Plan, in place when the Dennises purchased their membership, members possessed the right to resign and upon reissuance of their membership, were entitled to receive the greater of their membership contribution or eighty percent of the contribution paid by the new purchaser. While the 1994 Plan provided that an equity member remained obligated to pay dues to the Club until his equity membership was reissued, the Plan then explained the dues "will accrue against and be deducted from the amount to be paid to the resigned member upon the reissuance" of his membership. In line with this, the 1994 Bylaws state, "Any equity member may resign from the Club by giving written notice to the Secretary. Dues, fees and charges shall accrue against a resigned equity membership until the resigned equity membership is reissued by the Club." These provisions unequivocally state that any liability for unpaid dues and fees accrues against membership **210 equity only, rather than on an ongoing basis against the member personally. Thus at the time the Dennises joined the Club, the extent of their continuing financial obligation upon resignation was their $31,000 initial contribution. Accordingly, even if I were to agree with the majority's assertion that the 1994 documents were supplanted by later amendments, a subsequent change in the bylaws and rules cannot strip *676 the Dennises of this substantive right contained in the documents at the time of purchase, and create unlimited personal liability where none previously existed. Indeed, taking the majority's view to its logical end, this is an obligation that could extend beyond a member's lifetime.[6] Even if I were to accept the majority's view that the documents justify rendering judgment as a matter of law, at some point courts are called upon to step in to alleviate a provision contrary to public policy. See Ward v. W. Oil Co. , 387 S.C. 268, 275 n.5, 692 S.E.2d 516, 520 n.5 (2010) (refusing to enforce an illegal contract because to do so "would violate statutory law and, in turn, public policy"); Branham v. Miller Elec. Co. , 237 S.C. 540, 545, 118 S.E.2d 167, 170 (1961) ("Freedom of contract is subordinate to public policy; agreements that are contrary to public policy are illegal.").
III. Nonprofit Corporation Act
I also disagree with the majority's interpretation of the Nonprofit Corporation Act. In my opinion, the majority's holding effectively eliminates any meaningful right of resignation, which the Act guarantees. Specifically, the Act provides,
(a) A member may resign at any time.
(b) The resignation of a member does not relieve the member from any obligations the member may have to the **211 corporation as a result of obligations incurred or commitments made before resignation.
S.C. Code Ann. § 33-31-620 (2006). Black's Law Dictionary defines "resign" as:
1. To formally announce one's decision to leave a job or an organization < to resign from the army>.
2. To give up or give back (an office, trust, appointment, etc.) to those by whom it was given; to surrender < the officer resigned his commission>.
3. To abandon the use or enjoyment of; to give up any claim to< the monk resigned his inheritance>.
Resign , Black's Law Dictionary (10th ed. 2014) (emphasis added).
While the Club strenuously asserts the Dennises were permitted to resign, I find this purported resignation meaningless because the Club continued to assess monthly membership dues, fees, and other charges, potentially throughout the Dennises' lifetimes.[7] Moreover, the Club's argument that it is justified in continuing to impose dues because the Dennises are still entitled to use all of the Club's amenities runs completely counter to the very concept of resigning. An individual who resigns relinquishes a claim, or "abandon[s] the use or enjoyment" thereof. Id. By continuing to assess membership **212 dues, fees, and other charges, the Club prevents the Dennises from "giving up...[or] surrend[erring]" their responsibilities, something I believe is contrary to the Act. Id. By accepting the interpretation of the ambiguous *677 terms offered by the Club, the majority conflates the meaning of an active and a resigned member because there is essentially no difference: both remain responsible for all conditions of membership.
I further disagree with the majority that requiring the Dennises to pay for dues accruing after resignation is consistent with the Act. I acknowledge the Official Comments to section 33-31-620 explain that a resigning member cannot shed complete liability for "obligations incurred or commitments made" prior to resignation. However, I believe the majority errs in classifying future dues and charges as "commitments made" before resignation because at the time the Dennises joined the Club, the 1994 Plan and Rules allowed members to resign without holding them personally liable for future dues and charges in perpetuity. The result reached by the majority not only deprives them of a remedy which they possessed at the time they joined the Club, but also one clearly granted to them by the Act, which is arguably contrary to public policy and akin to enforcing an illegal contract. Ward , 387 S.C. at 279, 692 S.E.2d at 522 (holding a contract involving gambling devices was illegal and therefore unenforceable); White v. J.M. Brown Amusement Co., 360 S.C. 366, 371, 601 S.E.2d 342, 345 (2004) ("The general rule, well established in South Carolina, is that courts will not enforce a contract when the subject matter of the contract or an act required for performance violates public policy as expressed in constitutional provisions, statutory law, or judicial decisions."). Moreover, at least one court has interpreted this provision in the Act to mean something different than a monetary obligation because the section also uses the phrase "obligations incurred." See Kidd Island Bay Water Users Co-op. Ass'n, Inc. v. Miller , 136 Idaho 571, 38 P.3d 609, 611 (2001) (noting under the Idaho Nonprofit Corporation Act, "commitments made" prior to resignation clearly means something other than a monetary obligation and applies to specific commitments by a member to the corporation).
Lastly, the majority's holding which forecloses the ability to resign has the potential to lead to an absurd result. Instead of **213 attempting to resign, members have more incentive to simply become "bad neighbors" and behave in such a way as to encourage the Club to suspend them, because suspension places them in a better financial situation than resignation. Suspended members have four months to pay all indebtedness, including dues that accrue during suspension. Any member who fails to do so "shall be expelled from the Club," ending their liability for future dues. Surely a member who peaceably resigns should not be placed in a worse pecuniary situation than a member who is suspended for violating Club rules and policies.
Therefore, in viewing the evidence in the light most favorable to the Dennises, I believe material issues of fact remain, rendering summary judgment improper. Accordingly, I would affirm the court of appeals and would remand to the trial court for further proceedings.
BEATTY, C.J., concurs.

The 1994 Bylaws provide the "Bylaws may be altered, amended, or repealed." The 1994 Plan provides the "Plan may be amended in accordance with the Bylaws." Similarly, the 1994 Bylaws provide the board of the Island Club have the authority to "[a]dopt, alter, amend, or repeal the Rules governing use of the Club."

There is no question the Dennises are contractually bound to the Members Club. The Dennises argued to the court of appeals there was no evidence their Island Club membership transferred to the Members Club. The court of appeals rejected this argument, stating, "We hold a question of fact does not exist as to whether Appellants were members of [the Members Club]." 417 S.C. at 615, 790 S.E.2d at 438. We agree.

The dissent incorrectly states the Club's position as to which version of the governing documents control the relationship. Rather than taking a position as to which documents control, the Club has argued from the beginning it is entitled to summary judgment under any version of the documents. At the summary judgment hearing, the Club stated, "The documents have been clear since 1994 that you are obligated to continue to pay until it's reissued." The Club made the same point in the hearing on the Dennises' motion to reconsider the summary judgment. In its brief to the court of appeals, the Club stated, "At all times during the Dennises' membership, the applicable governing documents mandated that members remain obligated for dues, fees and assessments until such time as their membership was reissued." Finally, in its brief to this Court, the Club stated, "From 1994 through the present date, all of the governing documents ... have plainly stated that members remain obligated to fulfill the commitments of membership in the Club until the reissuance of their membership."

Although we disagree with the court of appeals' legal reasoning here, we do applaud the reference to the Eagles' hit Hotel California . See 417 S.C. at 618, 790 S.E.2d at 439.

Needless to say, I disagree with the majority that I have incorrectly stated the Club's position as to the controlling documents, but this disagreement merely underscores our differing views as to what a party must show to justify a grant of summary judgment. The Club never specifically argued the 2008 Plan, 2009 Bylaws, and 2009 Rules control, as the majority has found. Even if I were to accept the premise that the Club argued all of the various documents support its position, I would still disagree with deciding this case as a matter of law because I discern at least one substantial difference in the documents, i.e., whether a resigned member is responsible for all unpaid dues and charges or whether that responsibility extends to future dues. Although I have pointed out other ambiguities in the documents, this is a substantial one which I believe should preclude summary judgment.

The 2008 Plan provides upon a member's death, the equity membership automatically transfers to the decedent's heirs, who then have 120 days to accept it. If the heirs decline to accept the membership, it is deemed resigned and will be reissued in the same manner as any other resigned membership, thereby exposing the estate to liability for future dues. Specifically,
[T]he estate of the deceased member shall be responsible for payment of all dues, fees and other Charges associated with the deceased member's Equity Membership from the date of the member's death until such time as the deceased member's residential unit or lot on Callawassie Island is transferred to another owner and such owner acquires an Equity Membership.

The majority blithely suggests the Dennises should sell their house in order to put an end to their monthly payments to the Club. However, even if the Dennises wanted to sell their home, that may be easier said than done. A news article that is included in the record reveals the Club's membership scheme has significantly chilled potential buyers. See Kelly Meyerhofer, Callawassie Club ruling: Court sides with members, cited Eagles song , The Beaufort Gazette (August 5, 2016), https://www.islandpacket.com/news/local/community/beaufortnews/article93992207.html. Indeed, according to the article, one member could not sell her property for over two years, despite listing it for $1. As of July 2016, eight lots were listed at less than $10,000 each, belying the use of the majority's description of Callawassie Island property as "exclusive." The majority also takes issue with my description of the result in this case being harsh, and opines that we should look no farther than the result in this case. However, it is not uncommon for appellate courts to consider what a decision may mean to other litigants in the future, and in view of the numerous lawsuits filed by the Club against its members resulting in a "Callawassie-specific body of case law," as noted by Dennises' counsel, I stand by my description of the majority's result being harsh.