# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The Callawassie Island Members Club, Inc., Respondent,

v.

Gregory L. Martin and Rebecca L. Martin, Defendants,

and

The Callawassie Island Members Club, Inc., Respondent,

v.

Michael J. Frey and Grace I. Frey, Defendants,

and

The Callawassie Island Members Club, Inc., Respondent,

v.

Mark K. Quinn and Sherry B. Quinn, Defendants,

Of Whom Michael J. Frey is the Petitioner.

Appellate Case No. 2020-000667

———————

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———————

Appeal From Beaufort County
J. Ernest Kinard, Jr., Circuit Court Judge

Opinion No. 28102
Heard November 9, 2021 – Filed August 3, 2022

**REVERSED AND REMANDED**

Ian S. Ford, Neil Davis Thomson, and Ainsley Fisher
Tillman, all of Ford Wallace Thomson, L.L.C., of
Charleston, for Petitioner.

Andrew F. Lindemann, of Lindemann and Davis, P.A., of
Columbia; M. Dawes Cooke Jr., John W. Fletcher, and
Bradley B. Banias, all of Barnwell Whaley Patterson &
Helms, L.L.C., of Charleston; Stephen P. Hughes, of
Howell Gibson & Hughes, of Beaufort; and James Andrew
Yoho, of Boyle, Leonard & Anderson, P.A., of Charleston,
for Respondent.

**CHIEF JUSTICE BEATTY:** The Callawassie Island Members Club, Inc.
("the Club"), brought separate actions against three couples—the Martins, the Freys,
and the Quinns—following a dispute over membership dues. The circuit court
granted the Club's motion for summary judgment. The court of appeals consolidated
the parties' appeals and affirmed. *Callawassie Island Members Club, Inc. v. Martin*,
Op. No. 2019-UP-393, 2019 WL 6897780 (S.C. Ct. App. filed Dec. 18, 2019). We
granted a petition for a writ of certiorari filed by Michael J. Frey ("Frey") challenging
the award of summary judgment.[1] Frey contends material questions of fact exist as
to whether the Club improperly billed him for continuing membership dues,
particularly where his membership was suspended over a decade ago and
membership was undisputedly optional when he joined. We reverse and remand.

---

[1] Frey's wife, the Martins, and the Quinns are not participating in the appeal to this
Court.

## I. FACTS

The Club is a social and recreational organization operating within a private, gated, residential community on Callawassie Island, an area in Beaufort County. Frey purchased a Golf Membership in 1995 for a capital contribution of $22,000.00 from the Club's predecessor, the Callawassie Island Club, Inc. ("the Island Club"), thus becoming an equity member. In addition, he purchased real property on Callawassie Island in a separate transaction.

The Island Club was established as a South Carolina nonprofit corporation to provide amenities for the Callawassie Island development, including a golf course, clubhouse, tennis facilities, and swimming pools. The Island Club had a specified number of equity memberships available, which corresponded to the capacity of its facilities: Golf Memberships (595), Spring Island Founder Memberships (40), and Social Memberships (850 less the number of outstanding Golf Memberships). Payment of an initial capital contribution, monthly dues, monthly food and beverage minimums, and any special assessments were required to be an equity member of the Island Club.

At the time Frey joined, equity memberships were not required to own property on Callawassie Island. Rather, according to the Island Club's 1994 "Plan for the Offering of Memberships in the Callawassie Island Club" ("the 1994 Plan"), memberships were options to be offered "to purchasers of residential units or lots in Callawassie and such other persons as the Club determines appropriate from time to time."[2] The 1994 Plan, along with the Island Club's Bylaws and General Club Rules, made up the core of the Island Club's organizational documents.

The Island Club's facilities, including the real property, equipment, and supplies, were initially owned by the Callawassie Island Company, L.P., a Delaware limited partnership ("the Partnership"). The 1994 Plan contemplated the eventual transfer of ownership and control of the facilities from the Partnership to the Island Club's equity members. In 2001, the transfer of assets was completed, and the Island Club began operating under its current designation, the Club. In August 2001, the Club issued a membership plan adopted by the board of directors ("the 2001 Plan"),

---

[2] The Island Club reserved the right to offer recallable "non-equity associate memberships" on an annual or seasonal basis to prospective members who were not current property owners in order to promote the sale of residential units and lots on Callawassie Island.

along with its own Bylaws and General Club Rules, which were similar in form to the organizational documents of the Island Club.

The Club's organizational documents were amended several more times after the Club assumed control in 2001. Among the notable changes that occurred in 2001 was an amendment to the Callawassie Island development's covenants to provide that all persons who purchased property on Callawassie Island after December 1, 2001 were required to purchase an equity membership in the Club and retain it so long as they owned their property.[3] Although the new membership requirement did not apply to existing property owners like Frey, he nevertheless encountered difficulties in exiting the Club.

After nearly fifteen years as a dues-paying member, Frey wished to end his Club membership, and he stopped paying dues in October 2009. There is evidence in the record that the Club formally deemed Frey's account delinquent and placed Frey's membership on the Club's suspension list in 2011.[4] Frey retained ownership of his property on Callawassie Island.

In 2012, the Club brought the instant action against Frey to collect allegedly delinquent dues, fees, and assessments based on claims of breach of contract and quantum meruit. The Club maintained that, when Frey purchased his property in 1995, he "could have elected to decline a membership with the Club at the time," but his purchase of an equity membership and ownership of a lot "require[d] [him] to remain [a member] in good standing under the terms and conditions of the governing

---

[3] The membership requirement was included in the "Amended and Restated General Declaration for Callawassie Island and Provisions for the Callawassie Island Property Owners Association, Inc." ("the 2001 Property Declaration"), which was adopted on December 1, 2001.

[4] The record contains a published list of the Club's suspended members as of November 15, 2011, which includes Frey. In addition, a "Member History" prepared by the Club (for the time period of 11/1/07 to 2/27/14) shows Frey's status as "S," i.e., suspended, and an affidavit dated March 3, 2014 from the Club's General Manager, Jeff Spencer, confirms in relevant part that the Club "ha[d] been forced, owing to non-payment, to suspend [Frey's] membership rights and privileges pursuant to the applicable documents."

documents, including the Plan and the Declaration."[5]  According to the Club, Frey was required to continue paying dues until his membership was reissued by the Club to a new member.

Frey, in turn, asserted Club membership was not contingent upon or linked to the ownership of his property on Callawassie Island.  Further, the organizational documents at the time he signed a membership agreement provided a suspended member "shall" be expelled after four months of nonpayment.  Frey alleged he should have been expelled from the Club four months after he stopped paying dues, which would have terminated his membership and the accrual of additional financial obligations.  Frey contended the expulsion provision was unilaterally changed by the Club by amending the Club Rules (around 2007 to 2008) to make expulsion subject to the Club's discretion rather than compulsory.  Frey further contended this change was made without notice to, or voting by, the equity members, contrary to provisions in the organizational documents that required any material alterations in the controlling terms affecting equity members to be approved by a majority of the members.

Frey additionally asserted the Club was obligated to keep a Resale List whereby memberships would be reissued pursuant to an agreed-upon protocol, but the Club did not do so and it has refused to provide full disclosure of its resale activities.  Frey stated the Club selectively permitted some individuals to leave the Club without imposing the ongoing accrual of dues.  In Frey's case, however, the Club insisted—and continues to insist, more than a decade after Frey was suspended from his "optional" membership—that Frey has a continuing obligation to pay dues until the Club reissues his membership.  It is undisputed that the Club has never reissued Frey's membership.  Frey alleged the Club effectively prevented him and other members from leaving because only the Club can expel a member and reissue memberships.

Based on the foregoing, Frey asserted several defenses and counterclaims regarding the Club's policies and contended he had no further obligations to the Club.

---

[5] "The Plan" apparently referred to the Club's 2001 Plan, as may be amended, and "the Declaration" referred to the 2001 Property Declaration, *see supra* note 3.  The Club is a distinguishable entity from the Callawassie Island Property Owners Association, Inc., which is not involved in this action.  When Frey obtained his equity membership in the Island Club (now the Club) in 1995, it was purchased in a separate contractual agreement and the membership did not run with the land.

Among his allegations, Frey maintained the Club violated South Carolina's Nonprofit Corporation Act of 1994 ("the NCA") by (1) failing to treat members of the same class the same with regard to their rights and obligations, particularly as to their rights of transfer; (2) improperly restricting transfer rights; (3) failing to allow members to approve fundamental membership changes; (4) improperly refusing to expel Frey and, thus, end his ongoing financial obligations; and (5) failing to have and maintain a fair and reasonable process for the termination of memberships.[6]

The circuit court granted the Club's motion for summary judgment and dismissed Frey's counterclaims. The circuit court awarded the Club damages of $58,744.23 and attorney's fees of $9,132.23, for a total judgment of $67,876.46. The circuit court reasoned that, even if Frey were expelled, he was obligated to continue paying dues, fees, and assessments until the Club reissued his membership pursuant to the Club's organizational documents, and it noted the decision whether to expel a member had been changed from the time Frey became a member and was now solely within the Club's discretion, rather than mandatory. The circuit court found it was irrelevant whether the Club had improperly amended any of the organizational documents regarding expulsion because the obligation to pay dues, fees, and assessments until a membership was reissued was evident in the original 1994 Plan. The circuit court rejected any relief under the NCA, finding "no violation of the statutory provisions relied upon by" Frey. The circuit court reasoned that the NCA recognizes a member of a nonprofit corporation is not relieved of "obligations incurred or commitments made" to the corporation prior to the member's resignation, suspension, or expulsion, so Frey's obligations were ongoing despite his suspension.

---

[6] *See, e.g.*, S.C. Code Ann. § 33-31-610 (2006) ("All members have the same rights and obligations with respect to voting, dissolution, redemption, and transfer, unless the articles or bylaws establish classes of membership with different rights or obligations. All members have the same rights and obligations with respect to any other matters, except as set forth in or authorized by the articles or bylaws."); § *id.* 33-31-611(c) ("Where transfer rights have been provided, no restriction on them is binding with respect to a member holding a membership issued before the adoption of the restriction unless the restriction is approved by the members and the affected member."); *id.* § 33-31-620(a) ("A member [of a nonprofit organization] may resign at any time."); *id.* § 33-31-621(a) (providing members of nonprofit corporations may not be expelled or suspended, and no membership in such corporations may be terminated or suspended, "except pursuant to a procedure that is fair and reasonable and carried out in good faith").

*See* S.C. Code Ann. § 33-31-620(b) (2006) (obligations made prior to resignation); *id.* § 33-31-621(e) (obligations made prior to suspension or expulsion). It also rejected Frey's contention that discovery was prematurely ended by the grant of summary judgment.

Frey appealed (along with his wife, who was then still a party). The Freys and two other couples who were challenging the Club's policies (the Martins and the Quinns) attempted to consolidate their appeals with that of Ronnie and Jeannette Dennis, who had resigned from the Club and also disputed their ongoing membership dues. The court of appeals declined to consolidate the appeals at that time and instead allowed the Dennises' case to proceed first. The court of appeals reversed the circuit court's grant of summary judgment to the Club and remanded the Dennises' case for trial, finding genuine issues of material fact existed as to whether the Dennises were liable for dues accruing after their resignation and whether the Club's organizational terms violated the NCA. *See Callawassie Island Members Club, Inc. v. Dennis*, 417 S.C. 610, 790 S.E.2d 435 (Ct. App. 2016) ("*Dennis I*").[7]

The court of appeals thereafter filed three unpublished opinions ruling on the Martin, Frey, and Quinn appeals, in which it affirmed in part, reversed in part, and remanded the cases to the circuit court. The court of appeals relied on its decision in *Dennis I* and found the grant of summary judgment was error, noting the Club's view would create an unreasonable situation in which the Club could refuse to ever allow a member to terminate his or her membership.[8]

---

[7] There are three appeals involving the Dennises that will be discussed herein. To distinguish them, the appeals shall be denominated *Dennis I* (the initial decision by the court of appeals reversing the circuit court's grant of summary judgment), *Dennis II* (this Court's decision reversing the court of appeals and reinstating summary judgment, but remanding the case to the court of appeals to rule on the remaining issues challenging summary judgment), and *Dennis III* (the decision of the court of appeals on remand, which reversed the summary judgment order).

[8] *See Callawassie Island Members Club, Inc. v. Martin*, Op. No. 2018-UP-178, 2018 WL 2059555 (S.C. Ct. App. filed May 2, 2018); *Callawassie Island Members Club, Inc. v. Frey*, Op. No. 2018-UP-179, 2018 WL 2059557 (S.C. Ct. App. filed May 2, 2018); *Callawassie Island Members Club, Inc. v. Quinn*, Op. No. 2018-UP-180, 2018 WL 2059558 (S.C. Ct. App. filed May 2, 2018).

During this interval, this Court issued a writ of certiorari to review the decision in *Dennis I*. We reversed in *Dennis II*, thereby reinstating summary judgment for the Club,[9] but we remanded the case to the court of appeals to rule on the Dennises' remaining issues challenging summary judgment that were not ruled upon by the court of appeals after it found other issues dispositive. *Callawassie Island Members Club, Inc. v. Dennis*, 425 S.C. 193, 821 S.E.2d 667 (2018) ("*Dennis II*").

After this Court's decision in *Dennis II*, the court of appeals granted rehearing in the *Frey*, *Martin*, and *Quinn* cases, consolidated the appeals, and issued the opinion that is now before this Court pursuant to Frey's petition for a writ of certiorari. *See Callawassie Island Members Club, Inc. v. Martin*, Op. No. 2019-UP-393, 2019 WL 6897780 (S.C. Ct. App. filed Dec. 18, 2019). In this revised decision, the court of appeals affirmed the grant of summary judgment to the Club, along with damages and attorney's fees, and determined there was no evidence the Club's membership provisions violated the NCA. The court of appeals indicated it felt constrained to reach this result, however, based on the precedent from this Court in *Dennis II*. *See, e.g.*, *Martin*, 2019 WL 6897780 at *4 ("Because the governing documents at issue in [*Dennis II*] are the same documents at issue in the instant cases, we affirm the grant of summary judgment to the Club on its claims against Appellants."); *id.* at *6 ("In light of the supreme court's holding in [*Dennis II*], we have no choice but to hold the requirement that members continue to pay dues, fees, and other charges after resignation until their membership is reissued is not prohibited by the Act.").

## II. STANDARD OF REVIEW

"When reviewing the grant of summary judgment, the appellate court applies the same standard applied by the trial court pursuant to Rule 56(c), SCRCP." *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002); *see also* Rule 56(c), SCRCP (stating summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law").

---

[9] We note the parties and the courts have used a variety of shortened monikers to identify the parties over the course of this litigation, and in *Dennis II* the Club was referred to as "the Members Club."

"When determining if any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party." *Fleming*, 350 S.C. at 493–94, 567 S.E.2d 857 at 860 (citing *Summer v. Carpenter*, 328 S.C. 36, 492 S.E.2d 55 (1997)).

This Court applies de novo review to questions of law, so it need not defer to the determination of the court below. *See Brock v. Town of Mount Pleasant*, 415 S.C. 625, 628, 785 S.E.2d 198, 200 (2016) (stating "[t]he interpretation of a statute is a question of law," and "[t]his Court may interpret statutes, and therefore resolve this case, 'without any deference to the court below'" (citations omitted)); *Milliken & Co. v. Morin*, 399 S.C. 23, 30, 731 S.E.2d 288, 291 (2012) (observing actions for breach of contract and "[w]hether a contract is against public policy or is otherwise illegal or unenforceable" are generally questions of law that are reviewed de novo by an appellate court (citations omitted)).

## III. DISCUSSION

Frey, the sole remaining petitioner here,[10] challenges the propriety of summary judgment in this matter. Frey argues that in revising its original decision, the court of appeals misconstrued this Court's precedent in *Dennis II*; disregarded established principles of contract law, the NCA, and public policy; improperly denied his counterclaims and discovery requests; and deprived him of appellate review of the issue of attorney's fees.

As to the precedent involving the Dennises, Frey argues his formal suspension—and the expulsion that should have followed—are distinguishable from the situation involving the Dennises, which concerned different provisions in the governing documents and the NCA governing resignation. Frey states members who are expelled, unlike those who resign, are banned from the Club for life and, thus, can never remain members. However, the Club unilaterally altered the expulsion provision to make it discretionary rather than mandatory, which violated the terms of the organizational documents and substantially affected his financial liability without notice to him or the membership at large.

Frey contends summary judgment is particularly inappropriate in light of material questions concerning the Club's potential contractual and NCA violations.

---

[10] Frey's case is one of dozens pending in the state and federal courts involving disputes between the Club and its members over the Club's membership policies.

For example, Frey asserts that, even though he was suspended by the Club, it continued to impose ongoing dues and fees in reliance on provisions in the organizational documents that stated membership dues terminated when the Club "reissued" a membership. Frey states other provisions in the organizational documents, however, simultaneously required the Club to formally expel a suspended member after four months of nonpayment. Upon expulsion, Frey maintains his equity membership should have terminated and his membership certificate should have been reissued by the Club in accordance with established protocols, thus ending any further financial obligations. Frey maintains the Club would have been more than adequately compensated for any time that elapsed before his membership was reissued because the organizational documents allowed the Club to impose a forfeiture in these circumstances up to the amount of a member's capital contribution to the Club.

Frey asserts Club membership is a contractual relationship that is distinct from the ownership of his property. Membership was optional for Callawassie Island residents when he joined, so Frey states it was improper for the Club to change the operational terms of their agreement to force him to remain a dues-paying member at ever-increasing membership rates, with no end in sight, while also selectively allowing other members to quietly exit the Club. Frey opines the perpetual fees are "too steep a price to pay for croquet and mah-jongg."

Frey notes that, because only the Club can reissue a membership, he cannot exit the Club by simply selling his property. As a result, Frey argues, he is effectively barred from exiting the Club unless the Club deigns to reissue his membership—which it has never done in the decade-plus since his suspension, and perhaps never will—prompting the court of appeals in *Dennis I* to liken the Club to the "Hotel California." *See Dennis I*, 417 S.C. at 618, 790 S.E.2d at 439 (observing Club members could "be trapped like the proverbial guests in the Eagles' hit *Hotel California*, who are told 'you can check-out anytime you like, but you can never leave'" (citation omitted)). Frey contends the Club's conduct and membership policies in this regard cannot comport with any rational public policy.

The Club, in contrast, maintains it can continue imposing dues and fees on a former member such as Frey because the Club's organizational documents have always provided that these expenses shall continue until a membership is reissued; it has never reissued Frey's membership; and the terms of the Club's rules were changed to no longer require the expulsion of a member for nonpayment. The Club asserts that, because it is no longer required to expel Frey, dues and fees can continue

to accrue. The Club maintains it has the authority to unilaterally impose a change in the Club documents, its actions do not violate the NCA or any other principle of law, and it has not breached any contractual provisions with Frey. The Club maintains summary judgment was appropriate and the case was not ended prematurely.

## A. Impact of *Dennis II*

As an initial matter, we agree with Frey that the *Dennis II* decision, standing alone, is not determinative of his case. In altering its original disposition, the court of appeals believed our decision in *Dennis II* was conclusive of the issues concerning the Club's membership policies, although the court of appeals notably expressed its reluctance in reaching this result. This Court's decision in *Dennis II*, however, concerned whether the court of appeals erred in holding specific portions of the Club's organizational documents regarding resignation were ambiguous and in interpreting a portion of the NCA that is applicable to resignations. Frey, in contrast, was formally suspended by the Club. This status triggers different provisions in the Club's organizational documents. *See, e.g.*, *Dennis II*, 425 S.C. at 204, 821 S.E.2d at 673 ("Here, no suspension ever occurred; the Dennises resigned. Therefore, the four-month suspension period that leads to expulsion was never triggered."). In this case, Frey argues his suspension should have resulted in an automatic expulsion, which would, in turn, render him permanently ineligible for membership in the Club.

In addition, Frey raises arguments about the resulting effect of perpetual liability resulting from the Club's unilateral decision to change substantive provisions of the Club's rules, in direct contravention to other organizational documents. In *Dennis II*, however, we specifically acknowledged that we were not addressing the potential for perpetual liability at that time, so a conclusive holding was not made in that regard. *Id.* at 202, 821 S.E.2d at 671–72 ("We are *not* deciding whether the governing documents could support perpetual liability under these or any other facts.").

Moreover, we agree with Frey that, even if some points involve established matters of law, the grant of summary judgment in his case prematurely ended the parties' discovery process. We believe questions about the application of the law to the relevant facts, which shall be discussed herein, preclude the grant of summary judgment. *See generally Wade v. Berkeley Cnty.*, 330 S.C. 311, 316, 498 S.E.2d 684, 687 (Ct. App. 1998) ("Summary judgment is inappropriate when further inquiry into the facts is desirable to clarify proper application of the law.").

Lastly, we note the case involving the Dennises did not actually end in summary judgment with the issuance of *Dennis II*. Although this Court reinstated summary judgment after finding no ambiguity in the organizational documents' terms regarding resignation, we remanded the matter to the court of appeals to address the Dennises' remaining issues challenging summary judgment that had not been addressed by the court of appeals after it found other points to be dispositive. *See Dennis II*, 425 S.C. at 195–96, 821 S.E.2d at 668 (observing "the court of appeals found it unnecessary to address all issues raised before it, so we [remand] this case to the court of appeals to address the other issues").

On remand, the court of appeals considered the Dennises' additional issues and affirmed in part, reversed in part, and remanded the matter for trial. *Callawassie Island Members Club, Inc. v. Dennis*, 429 S.C. 493, 839 S.E.2d 101 (Ct. App. 2019) ("*Dennis III*"). In relevant part, the court of appeals reversed the grant of summary judgment after concluding "a genuine issue of fact exists as to whether the Club violated the [NCA] by allowing some [C]lub members to concede their memberships and not others." *Id.* at 502, 839 S.E.2d at 106. Thereafter, this Court denied cross petitions by the Dennises and the Club for a writ of certiorari to review *Dennis III*. *See Callawassie Island Members Club, Inc. v. Dennis*, Appellate Case No. 2020-000670 (S.C. Sup. Ct. Order filed Jan. 22, 2021) (order denying cross petitions for a writ of certiorari). As a result, the matter involving the resignation of the Dennises was ultimately remanded for trial.

## B. Propriety of Summary Judgment

As noted, the case involving the Dennises ultimately ended in the reversal of summary judgment after the court of appeals (1) found genuine issues of material fact existed regarding whether some Club members were allowed to concede their memberships, while others were not; and (2) concluded it was also up to the trier of fact to determine whether the Club's conduct violated provisions of the NCA. *See Dennis III*, 429 S.C. at 502, 839 S.E.2d at 106.

In reaching this conclusion, the court of appeals observed in *Dennis III* that section 33-31-610 of the NCA generally requires all members to have the same rights and obligations with respect to matters such as the transfer of membership. *See id.* at 499, 839 S.E.2d at 104 (citing section 33-31-610); *see also* S.C. Code Ann. § 33-31-610 (2006) ("[A]ll members have the same rights and obligations with respect to voting, dissolution, redemption, and transfer, unless the articles or bylaws establish classes of membership with different rights or obligations. All members have the

same rights and obligations with respect to any other matters, except as set forth in or authorized by the articles or bylaws.").

In addition, the court of appeals observed that subsection 33-31-611(c) of the NCA provides that where transfer rights have been provided in the articles or bylaws, the addition of restrictions on those rights must be approved by the members of the nonprofit corporation, i.e., the Club's members. *See Dennis III*, 429 S.C. at 499, 839 S.E.2d at 104–05 (citing subsection 33-31-611(c)); *see also* S.C. Code Ann. § 33-31-611(c) (2006) ("Where transfer rights have been provided, no restriction on them is binding with respect to a member holding a membership issued before the adoption of the restriction unless the restriction is approved by the members and the affected member.").

Most importantly, the court of appeals held in *Dennis III* that the circuit court erred in treating the issue concerning violation of the NCA as a question of law, when it is "more appropriately an issue to be determined by a factfinder." *Dennis III*, 429 S.C. at 500, 839 S.E.2d at 105.

We similarly hold that Frey's case presents a genuine issue of material fact as to whether the Club violated the NCA by failing to afford each of its members the same rights and obligations as to their transfer rights and in making changes that affected those rights and obligations without the vote of the affected members.

There is evidence in the record that the Club selectively allowed some members to concede their memberships, while others, such as Frey, found themselves lingering on the elusive Resale List controlled by the Club. For example, a letter from the Club's Treasurer, J. Richard Carling, dated February 19, 2007, advised a couple (the Carpenters) that they had previously been informed their membership had been suspended for nonpayment and that the Club's rules provided anyone who was suspended "shall" be subject to expulsion and required to turn over his or her certificate of membership for reissuance by the Club to a new member:

> As you know, your membership in the Callawassie Island Members Club, Inc. **was suspended** by the Board of Directors in accordance with Section 13.3.1 of the Callawassie Island Members Club, Inc. General Club Rules **for failure to pay dues**, fees, assessments and charges associated with your account.

Please refer to Paragraph 13.1.1 of the Club Rules that states "any member whose account is not settled within the **four (4) months period following suspension shall be expelled from the club**." Paragraph 14.1.5 states that "Any Member of the Club **who has been expelled shall not again be eligible for membership** nor admitted to Club Facilities under any circumstances. An expelled member shall be so notified by registered mail and **shall have the obligation to surrender his or her membership certificate for reissuance by the Club to a new member**.

As a result of current management changes we would like to offer delinquent members another opportunity to bring their accounts current. This correspondence serves as written notification that your account needs to be settled by March 1, 2007.

If you decide to pass on this opportunity, and do not bring your account up to date within ten (10) days of this correspondence, you will be expelled from membership in the Callawassie Island Members Club, Inc., and the following procedures will be put in motion to collect the debt [describing the commencement of a debt collection action].

(Emphasis added.) Frey notes the Club has admitted that it has made offers to other members that allowed them to concede their memberships and forfeit the return of their equity payments in exchange for a termination of their obligations. That such offers were made is readily apparent from a 2014 affidavit from a member of the Club's board of directors, Harman Switzer, although the Club argues some of those offers were made under distinguishable circumstances. The record contains a sampling of offers made to other members, some of which included the admonition that the recipients must keep any such transactions "confidential." In addition, there is evidence from a Club employee who was the membership coordinator and managed the Resale List that the Club secretly allowed some members to concede and/or resign memberships for years, reportedly due to the extremely slow progression of the Club Resale List. By the terms of the organizational documents,

the Club had an agreed-upon protocol for reissuing memberships.[11]  Consequently, the manner in which the Club made its decisions regarding the reissuance of memberships is an appropriate topic for further development at trial.

Membership in Callawassie's social organization was **not** a requirement to own a residence on Callawassie Island when Frey became a member, and neither was perpetual membership.  Frey argues the problems that arose in this case came about because the Club was having trouble selling all of its memberships.  It appears the protocol established in the organizational documents for the reissuance of memberships was either inadequate or subverted in order to favor certain members.  It is unclear why the Club has not reissued Frey's membership following his suspension from the Club over a decade ago.  Frey contends the Club did reissue memberships for other residents on a selective basis that was not made available nor disclosed to all members, thereby unfairly subjecting him to disparate treatment, and the Club has effectively attempted to impose membership dues and fees in perpetuity in order to make up for the Club's shortage of new members.  At a minimum, Frey's allegations in this regard present questions of fact that should not be decided by a court as a matter of law.

Under the Club's theory of the case, even though membership at the time Frey joined was strictly optional, a member can never actually terminate his or her membership following a delinquency after the Club unilaterally changed the terms of the organizational documents.  The organizational documents of the Island Club and the Club both stated dues obligations would continue until a membership was reissued, but at the time Frey joined this reissuance provision operated in tandem with other provisions that stated a member who was delinquent could be suspended

---

[11] Until all of the original memberships were sold, every fourth equity membership was to come from the Resale List of resigned memberships.  The memberships were to be reissued on a first-come, first-served basis (subject to the Callawassie Island Partnership's right of first refusal).  Members who resigned were generally liable for dues until the Island Club reissued their equity memberships to new members.  Upon reissuance, the member was entitled to receive the greater of (1) the membership contribution that the resigned member paid, or (2) eighty percent of the membership contribution paid by the purchaser of the resigned member's membership.

(which Frey was) and that after four months any suspended member **must** be expelled and their payments forfeited.[12]

We find the alteration of one part of the equation, i.e., the provision for expulsion and the forfeiture of all payments, is evidence that may support Frey's claim that the Club has effectively made it impossible for members to terminate their obligations if the Club chooses not to reissue a membership. This is, arguably, a material, substantive change that alters the parties' original documents and adversely affects the rights of the members. Consequently, it required a majority vote of the affected equity members pursuant to the terms of the original organizational documents. The Club does not deny that it unilaterally made this change, but it argues it was free to do so without the consent of the equity members. Under this scenario, a suspended member could theoretically be forced to pay membership dues in perpetuity.

Turning to the opinion of the court of appeals in this matter, however, we note that it found "the evidence [did] not raise a genuine issue of material fact regarding whether the governing documents were properly changed and whether the mandatory expulsion provision was still in effect at the time of [Frey's] suspension[]" from the Club." *Callawassie Island Members Club, Inc. v. Martin*, Op. No. 2019-UP-393, 2019 WL 6897780, at *5 (S.C. Ct. App. filed Dec. 18, 2019). The court of appeals found Frey incorrectly relied "on language in the Plan rather than the amendment provision in the Rules." *Id.* The court of appeals stated the 2007 and 2009 General Club Rules now provide as follows:

> [T]he Board of Directors reserves the right to amend or modify these rules when necessary and will notify the membership of such changes. Any such amendments or modifications **shall be subject to and controlled by the applicable provisions of the By-Laws and the Plan for the Offering of Memberships**.

---

[12] In comparison, when the Club has suspended a member for improper conduct, the suspension is specifically limited to one year. Thus, if Frey had been suspended for "misconduct," there would have been some type of limitation on the length of the suspension, whereas the Club apparently now has no limit on the length of time a member may be suspended and obligated to continue paying dues and expenses due to the delinquency.

*Id.* (emphasis added). We disagree with the court of appeals to the extent it finds the 2007 and 2009 General Club Rules controlling on the issue of modification. As emphasized in the language quoted above, the General Club Rules were always "subject to and controlled by" the Plan and the Bylaws. The Plans and Bylaws originally required a majority vote of the equity members in these circumstances, and the Club could not subvert this protection on voting rights by making a unilateral change in the General Club Rules for its own benefit that materially and adversely affected the financial interests of equity members like Frey. Provisions that surreptitiously purport to permanently lock in Club members in this manner violate the NCA.

For all the foregoing reasons, we agree with Frey that the court of appeals erred in affirming the circuit court's grant of summary judgment to the Club, along with the attendant awards of damages and attorney's fees. *See generally Camburn v. Smith*, 355 S.C. 574, 581, 586 S.E.2d 565, 568 (2003) ("An award of attorney's fees will be reversed [when] the substantive results achieved by counsel are reversed on appeal."); *Dennis III*, 429 S.C. at 501–02, 839 S.E.2d at 106 (holding, upon remand, that an award of attorney's fees would be reversed where the grant of summary judgment to the Club was reversed). Because Frey's counterclaims are inextricably linked to the issues on appeal and were prematurely ended in this case, we likewise reverse the grant of summary judgment to the Club in this regard.

On remand, the parties shall be permitted to ask the circuit court for any final discovery material that they believe is pertinent to fully address the issues on remand before proceeding to trial. *Cf. Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 113, 410 S.E.2d 537, 544 (1991) (acknowledging that while more than three years had elapsed between the filing of the actions and the grant of partial summary judgment, the plaintiffs had acted with due diligence and should not be precluded from having a reasonable time to procure discovery on remand for trial).

## IV. CONCLUSION

We reverse the decision of the court of appeals and remand Frey's case to the circuit court for further proceedings.

**REVERSED AND REMANDED.**

**KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**